792 P.2d 728

**Timothy W. JEPSON and Deborah J. Jepson, husband and wife, Plaintiffs/Appellants,**

v.

**Cynthia Joanne NEW, a single woman; James New and Jane Doe New, husband and wife; Irene Hasal, a single woman; and Stephen Brown and Harriet Brown, husband and wife, Defendants/Appellees.**

**John FLYNN, Plaintiff/Appellant,**

v.

**CORNOYER–HEDRICK ARCHITECTS & PLANNERS, INC., an Arizona corporation; Okland Construction Company, Inc., a Utah corporation; Charles W. Akerlow and Jane Doe Akerlow, husband and wife; Brent R. Dyer and Jane**

Doe Dyer, husband and wife; John J. Thomas and Jane Doe Thomas, husband and wife; Okland, Ltd., Inc., a Utah corporation doing business as Camelback and 33rd Street Partnership, Defendants/Appellees.

Nos. CV–89–0058–PR, CV–89–0106–PR.

Supreme Court of Arizona, En Banc.

May 10, 1990.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gerald Gaffaney and Leslie A. Kresin, Phoenix, for plaintiffs/appellants Jepson.

Crampton, Woods, Broening & Oberg by Brian Holohan, Phoenix, for defendants/appellees New.

Johnston, Maynard, Grant & Parker by Daniel D. Maynard and Clifford J. Roth and M. Robert Dauber, Phoenix, for defendants/appellees Hasal and Brown.

Donald R. Crowell, Phoenix, for plaintiff/appellant Flynn.

Romley & Romley by Arthur E. Romley, Phoenix, for defendant/appellee Cornoyer-Hedrick Architects & Planners, Inc.

Teilborg, Sanders & Parks by Bradley R. Jardine and Alison Lewis, Phoenix, for defendants/appellees Okland Const. Co., Inc.,

Akerlow, Dyer, Thomas, Okland, Ltd. and Camelback and 33rd Street Partnership.

LACAGNINA, Judge.

John Flynn's personal injury action was dismissed for lack of prosecution after the trial court denied his motion to continue the case on the court's inactive calendar under Uniform Rule V(e), Ariz.Uni.R.P.Super.Ct., 17B A.R.S. Additionally, the trial court denied his request for relief under Ariz.R. Civ.P. 60(c), 16 A.R.S., and A.R.S. § 12–504, this state's savings statute, and the court of appeals affirmed. *Flynn v. Cornoyer–Hedrick Architects & Planners, Inc.,* 160 Ariz. 187, 772 P.2d 10 (App.1989).

Timothy and Deborah Jepson's personal injury action was also dismissed for lack of prosecution pursuant to Rule V(e). The trial court denied their motion for relief under Rule 60(c) and, alternatively, under the savings statute. The court of appeals affirmed the trial court's denial of Rule 60(c) relief but reversed the denial of relief under A.R.S. § 12–504. *Jepson v. New,* 160 Ariz. 193, 772 P.2d 16 (App.1989).

*Flynn* and *Jepson* were decided by different departments of the same division of the court of appeals, each prescribing a different test for granting relief under the savings statute. Because of the conflict within the appellate court and the uncertainty and confusion among trial courts and practitioners, we consolidated these cases and granted review. We adopt the test applied by the court of appeals in *Flynn* and reject the tests applied in *Jepson.* However, we find that the trial court abused its discretion in denying the Jepsons relief under Rule 60(c). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

### A. *Flynn v. Cornoyer–Hedrick*

On December 17, 1983, John Flynn fell on a stairway of an office building. In September 1985, his trial counsel sent letters to the liability carriers of potential defendants, outlining Flynn's damages and making a settlement offer. On December 17, 1985, Flynn filed a complaint against the owner, designer, builder and manager of the building. The defendants' liability carriers were not advised that a lawsuit was filed until June 1986.

On August 22, 1986, the court administrator issued a standard Rule V(e) notice placing the case on the inactive calendar on September 22, 1986, for dismissal on November 24, 1986. On September 17 Flynn served the defendants and on November 20, he filed a motion to continue the case on the inactive calendar with oral argument set for January 1987. The defendants opposed the motion and filed a motion to dismiss for lack of prosecution. In the meantime, the case was automatically dismissed for failure to comply with Rule V. Flynn moved to set aside the dismissal under Rule 60(c). The trial court granted the defendants' motion to dismiss, ruled the 60(c) motion was moot, and denied Flynn's subsequent motion for relief under A.R.S. § 12–504. Flynn appealed.

The court of appeals agreed with the trial court that Flynn failed to establish good cause to justify a continuance of the case on the inactive calendar, rejecting Flynn's argument that the trial court abused its discretion under *Gorman v. City of Phoenix,* 152 Ariz. 179, 731 P.2d 74 (1987). After comparing the facts in *Gorman* to those in Flynn's case, the court of appeals further concluded that Flynn was neither entitled to a continuance of the case on the inactive calendar nor relief from the judgment of dismissal under Rule 60(c). Additionally, the court of appeals found that the trial court correctly denied Flynn's request for relief under A.R.S. § 12–504, applying a test derived from *Gorman,* which balances the prejudice to the respective parties while considering whether the plaintiff acted reasonably and in good faith and prosecuted the case diligently and vigorously, and whether a procedural impediment affected the plaintiff's ability to file a second action.

Flynn petitioned this court for review, contending that the court of appeals test for granting relief under § 12–504(A) is the equivalent of the standard used under Rule

60(c), rendering the savings statute superfluous, and that the test should instead balance the prejudice to the parties, and that the trial court did not give ongoing settlement negotiations sufficient weight.

### B. *Jepson v. New*

On December 18, 1983, a collision occurred between two vehicles, one driven by Irene Hasal (owned by Stephen and Harriet Brown) and one driven by Cynthia New (owned by James and Jane Doe New). The Jepsons, passengers in the Hasal vehicle, were injured; on October 1, 1985, they filed a complaint against the drivers and owners of both vehicles. In July 1986, a Rule V notice was issued that the case would be placed on the court's inactive calendar on August 1, 1986, for dismissal on October 1. The Jepsons obtained an *ex parte* continuance of the dismissal date to December 1.

In July, August and September of 1986, the Jepsons served the defendants with summonses, complaints and discovery and responded to discovery. On December 1, 1986, the case was automatically dismissed for lack of prosecution, unbeknownst to the parties who continued to engage in discovery. The Jepsons filed their list of witnesses and exhibits in accordance with Rule V(a). After receiving the judgment of dismissal dated December 17, 1986, the Jepsons moved to set aside the judgment under Rule 60(c) and for alternative relief under A.R.S. § 12–504. The motion was denied, and the Jepsons appealed.

The court of appeals found the trial court did not abuse its discretion in denying the Jepsons relief under Rule 60(c)(6) but reversed the court's denial of relief under the savings statute. It found that the trial court erroneously applied the same standard for granting relief under Rule 60(c)(6), a standard emphasizing the plaintiff's diligence in prosecuting the action, to its determination of whether relief was warranted under the savings statute. Rejecting this standard, the standard applied in *Flynn*, the court of appeals held that trial courts must compare the prejudice to the parties while considering the litigants' reasonable and good faith conduct. Applying

that standard, the court concluded the Jepsons were entitled to relief under the savings statute.

The defendants petitioned this court for review, contending that the court of appeals applied the wrong standard and that the standard articulated in *Flynn* should have been adopted. Under that standard, they argue, relief under A.R.S. § 12–504 must be denied and the trial court affirmed. The Jepsons cross-petitioned, claiming that, based on *Gorman*, the trial court abused its discretion in denying relief under Rule 60(c)(6).

### DISCUSSION

### A. *Flynn v. Cornoyer–Hedrick*

1. · Motion to Continue on Inactive Calendar, Dismissal and Rule 60(c)

We first consider whether the trial court abused its discretion in denying Flynn's motion to continue the case on the inactive calendar, dismissing the case for lack of prosecution and denying his motion for Rule 60(c) relief.

Rule V(e) provides in part as follows:

**(e) Inactive Calendar.** The clerk of the court or court administrator shall place on the Inactive Calendar every case in which a Motion to Set and Certificate of Readiness has not been filed within nine months after the commencement thereof,.... All cases remaining on the Inactive Calendar for two months shall be dismissed without prejudice for lack of prosecution, and the court shall make an appropriate order as to any bond or other security filed therein, unless prior to the expiration of such two months period:

(1) A proper Motion to Set and Certificate of Readiness is filed; or

(2) The court, on motion for good cause shown, orders the case to be continued on the Inactive Calendar for a specified period of time without dismissal.

In exercising its discretion to grant a continuance, the trial court considers the same conditions that permit relief under

Rule 60(c), provided that the good cause required by Rule V(e)(2) is shown. *Campbell v. Deddens*, 93 Ariz. 247, 251, 379 P.2d 963, 965 (1963); *Hyman v. Arden–May Fair, Inc.*, 150 Ariz. 444, 448, 724 P.2d 63, 67 (App.1986). Thus, the litigant must first establish any of the Rule 60(c) bases for relief and, where the basis is under Rule 60(c)(6), the litigant must show extraordinary circumstances of hardship or injustice justifying relief. *Davis v. Davis*, 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1985). Where the case will be dismissed for lack of prosecution under Rule V(e), the court also considers the factors set forth in *Gorman:* (1) vigorous pursuit of the case, (2) steps taken to inform the court of the case's status, and (3) prejudice to the moving party, such as the running of the statute of limitations. 152 Ariz. at 183, 731 P.2d at 78. The movant must also show that he acted promptly in seeking the continuance and that his claim is meritorious. *Id.*

■ Whether the facts establish good cause under Rule V(e)(2) is a matter left to the sound discretion of the trial court. *Walker v. Kendig*, 107 Ariz. 510, 489 P.2d 849 (1971). Applying the *Gorman* test, the court of appeals concluded that Flynn had failed to demonstrate good cause to continue the case on the inactive calendar and, therefore, did not demonstrate that he was entitled to relief. We agree.

The record reveals that Flynn's trial counsel communicated with the defendants' insurance carriers in September 1985, almost two years after the accident and approximately three months before the complaint was filed. Flynn contends there were settlement discussions with the defendants' carriers, although the record fails to reveal the extent of these negotiations; the last discussion was apparently in mid-August 1986. Flynn did not serve the defendants until he received the Rule V notice; he never served the defendants with discovery. He did not file a motion to continue the case on the inactive calendar until four days before the dismissal date. Additionally, Flynn did not ask for accelerated oral argument on his motion and the case

was automatically dismissed with prejudice for lack of prosecution on December 2.

■ Additionally, where the sole reason given for the failure to prosecute a case is that the parties were engaging in settlement negotiations, good cause has not been shown. Settlement negotiations may be considered by the trial court in exercising its discretion, but the trial court decides how much weight that factor should be given. A "desultory exchange of settlement letters ... may count for very little." *Gorman*, 152 Ariz. at 183, 731 P.2d at 78. Flynn argues that the trial court did not give sufficient weight to the settlement negotiations here. Based upon our review of the record, there is very little evidence regarding the extent of such negotiations. Even assuming they were extensive and in earnest, Flynn is not excused from complying with applicable rules of practice or from pursuing his case diligently. Granting the trial court the broad discretion to which it is entitled, *see Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 688 P.2d 637 (1984), we cannot say the denial of the continuance on the inactive calendar was an abuse of that discretion.

■ There are also insufficient grounds for setting aside the dismissal. The only basis set forth in Flynn's Rule 60(c) motion was that he had filed a motion to continue the case on the inactive calendar. Flynn did not vigorously pursue his case and was seriously remiss in advising the court of its status. Although the running of the statute of limitations presents an extraordinary hardship to Flynn, this fact alone does not constitute grounds for relief under Rule 60(c)(6). *Bickerstaff, supra.*

2. Savings Statute

Our discussion of the trial court's denial of relief under § 12–504 requires an overview of the history of the provision and its underlying purposes.

A.R.S. § 12–504(A) provides as follows:

A. If an action is commenced within the time limited for the action, and the action is terminated in any manner other than by abatement, voluntary dismissal,

dismissal for lack of prosecution or a final judgment on the merits, the plaintiff, or a successor or personal representative, may commence a new action for the same cause after the expiration of the time so limited and within six months after such termination. If an action timely commenced is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

This provision was enacted in response to our call to the legislature in *Hosogai v. Kadota*, 145 Ariz. 227, 700 P.2d 1327 (1985), to enact a general savings statute. In *Hosogai*, the plaintiff filed a timely wrongful death action and obtained a jury verdict in her favor. That judgment was overturned on grounds of defective service of process and failure to obtain personal jurisdiction over the defendant, a resident of Japan. The plaintiff filed a second lawsuit which was dismissed because the statute of limitations had run. We reversed the dismissal and, in the absence of a savings statute, found that the statute of limitations equitably tolled.

*Hosogai* is instructive because it discusses the equitable tolling doctrine from which the savings statute evolved. However, the statute goes further than *Hosogai*, providing automatic relief in cases like *Hosogai*, as well as discretionary relief where an action is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution. Neither the statute nor the legislative record relating to the provision, however, indicate what factors should be considered by trial courts in exercising that discretion.[1] The conflicting tests adopted by different departments of the court of appeals reflect the need for articulating such a standard.

We note initially that the very nature of the discretionary portion of the provision requires a case-by-case application and evaluation. Any standard, therefore, must be flexible. Moreover, the standard must ensure that the statute is not misused as a safe haven for the dilatory and a loophole through which parties may avoid the applicable rules of practice and procedure. Additionally, the standard must serve the policies underlying the equitable tolling doctrine. Courts should consider whether the purposes of the statute of limitations are being served, even where a savings statute has been enacted. Professor William D. Ferguson, *The Statutes of Limitation: Saving Statutes* 58 (1978).

In *Hosogai*, we noted that the primary policy underlying the statute of limitations is the protection of defendants and courts "from litigation of stale claims where plaintiffs have slept on their rights and evidence may have been lost or witnesses' memories faded." 145 Ariz. at 232, 700 P.2d at 1332 (*quoting Brooks v. Southern Pacific Company*, 105 Ariz. 442, 444, 466 P.2d 736, 738 (1970)). We found that the purposes of the statute of limitations are furthered where the statute is equitably tolled after consideration of the following criteria:

(1) timely notice to the defendant in filing the first claim;

(2) lack of prejudice to the defendant in gathering evidence to defend against the second claim;

(3) reasonable and good faith conduct by the plaintiff in prosecuting the first action and diligence in filing the second action.

145 Ariz. at 233, 700 P.2d at 1333.[2]

We consider the plaintiff's diligence important. The test applied by the court of appeals in *Flynn* accomplishes the purposes and promotes the policies of statutes

---

1. *See* "Minutes of the House Judiciary Committee" February 24, 1986, and "Minutes of the Senate Judiciary Committee" April 7, 1986.

2. *See also* W. Ferguson, *supra*, at 58–59. As Professor Ferguson points out, "where the jurisdiction considers the diligence of the plaintiff to be an important facet of the statutes of limitation, this could be considered to prevent misuse of the savings statute."

of limitations by including diligence among the factors considered in determining whether to grant relief. Moreover, the *Flynn* test serves what we believe is the legislative purpose of the savings statute: to provide a *"limited extension* to prevent injustice." *Flynn, supra,* 160 Ariz. at 192, 772 P.2d at 15 (emphasis in original).

We quote with approval the standard adopted by the court in *Flynn:*

> A mere balancing of prejudice to each party should not constitute the sole factor considered by the trial court. Several factors must be considered in determining whether to permit a plaintiff to refile. *The court should ascertain whether the plaintiff acted reasonably and in good faith, whether he prosecuted his case diligently and vigorously, whether a procedural impediment exists which affects his ability to file a second action, and whether either party will be substantially prejudiced.* * * *
>
> *The burden is on the plaintiff to present the particular circumstances that justify relief under § 12–504.*

160 Ariz. at 192, 772 P.2d at 15 (emphasis added; citations omitted).

In adopting the *Flynn* standard, we necessarily reject the standard utilized in *Jepson.* The *Jepson* court, in rejecting *Flynn,* noted that "diligence is no longer the hallmark" when relief is sought under the savings statute as opposed to Rule 60(c)(6). 160 Ariz. at 201, 772 P.2d at 24. "Rather, *the focus shifts from diligence to good faith and comparison of prejudice* when a party already denied 60(c)(6) reinstatement seeks permission for refiling under § 12–504." *Id.* (emphasis in original). In granting relief on the facts in *Jepson,* the court of appeals focused primarily on the balancing of prejudice to the parties, and concluded that the defendants had shown no prejudice while the Jepsons showed the prejudice to them, the loss of their personal injury action, was great. In criticizing the standard articulated in *Flynn,* the *Jepson* court stated that "[b]y conditioning savings statute relief upon a showing of diligent prosecution, they have blurred the issue of

refiling under § 12–504 with the issue of reinstatement under Rule 60(c)(6)." *Id.* Specifically, the court pointed out that if the plaintiff showed such diligence under the standard set forth in *Gorman,* Rule 60(c)(6) relief would be available; thus, where the plaintiff could not show sufficient diligence for Rule 60(c)(6) relief, the court stated, relief under A.R.S. § 12–504 would also be unavailable.

We disagree. First, where the statute of limitations has run and the test focuses primarily upon a balancing of prejudices, there would be an automatic exercise of discretion in favor of the plaintiff. There can hardly be any prejudice greater than the complete loss of a cause of action. Even where the defendant would be greatly prejudiced, such as where evidence has been lost or witnesses are no longer available, the defendant may not have the opportunity to demonstrate the prejudice because the relief is often sought *ex parte.* Regardless of the reason for the termination of the action, therefore, relief would almost always be granted, rendering meaningless the legislature's distinction between the first sentence of paragraph A of § 12–504, and the second sentence of the paragraph.

Second, the *Flynn* test does not blur the distinction between relief under Rule 60(c)(6) and relief under the savings statute, nor does our interpretation of the statute render it superfluous, redundant or trivial. The distinction between Rule 60(c)(6) and A.R.S. § 12–504 is readily discernible. The relief sought under the two provisions is entirely different. Under Rule 60(c), the litigant is seeking reinstatement of the prior lawsuit; the savings statute, however, allows commencement of an entirely new action.

Also, 60(c) relief requires satisfaction of certain criteria that the statute does not. The provisions of Rule 60(c)(1) through (5) specify that the request for relief may be based on mistake, inadvertence, surprise or excusable neglect; newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; fraud, misrepresentation or oth-

er misconduct of an adverse party; a void judgment; and, the fact that the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or when it is no longer equitable to apply the judgment prospectively. Rule 60(c)(6) is a catchall, providing relief for "any other reason justifying relief from the operation of the judgment." As we have stated, in order to obtain relief under Rule 60(c)(6), a party must show extraordinary circumstances of hardship or injustice. *Davis v. Davis, supra.* Where Rule 60(c)(6) relief is sought from a Rule V dismissal for lack of prosecution, the litigant must show that the cause was prosecuted vigorously and diligently, that reasonable steps were taken to inform the court of the status of the case, and that substantial prejudice will result unless relief is granted. *Gorman, supra,* 152 Ariz. at 183, 731 P.2d at 78. Where relief is sought under any of the provisions of Rule 60(c), the litigant must also establish that relief was sought promptly and that a meritorious claim or defense existed. *Id.*

It is evident that the diligence necessary to obtain relief under Rule 60(c) should also be part of the standard for relief under the savings statute. First, as discussed above, it furthers the purposes of the statute of limitations and ensures that the savings statute is not abused by dilatory litigants. Second, we believe that a finding of diligence is implicit in the statute itself.

The fact that discretionary as opposed to automatic relief is available where an action is terminated by abatement, voluntary dismissal or lack of prosecution is significant. To avoid each type of termination requires some measure of diligence. The legislature did not intend the savings statute to be used as a respite for the litigant whose neglect resulted in one of these specific kinds of terminations in the first place. Their distinctive feature is even more clearly illustrated by comparing them to other kinds of dismissals, such as those listed under Ariz.R.Civ.P. 12(b), 16 A.R.S., for which automatic relief is available. Dismissals as discovery sanctions under Ariz. R.Civ.P. 37, 16 A.R.S., are another example. Diligence is simply not a necessary component in a case where automatic relief is granted under A.R.S. § 12–504. For example, no amount of diligence would have prevented the plaintiff from losing her claim in *Hosogai* where an appellate court determined that the trial court lacked personal jurisdiction over the defendant because of insufficient service of process.

The savings statute recognizes that a litigant may sometimes be entitled to relief, despite facts that suggest a lack of diligence. For example, an action abates unless service is effected within one year of the filing of a complaint or that abatement period is enlarged. Ariz.R.Civ.P. 6(f), 16 A.R.S. To obtain relief under the savings statute where the action has abated and been terminated, the plaintiff must show that diligent efforts, he was unable to effect service. Perhaps plaintiff's request for an enlargement of the abatement period under Rule 6(f) was denied. Perhaps, too, the plaintiff diligently tried to serve the defendant but neglected to seek an enlargement of the abatement period, after which the case was terminated. Although the litigant's error may not be legally excusable under Rule 60(c), the circumstances may nevertheless justify relief under the savings statute.

With regard to a voluntary dismissal by order of the court, Ariz.R.Civ.P. 41(a)(2), 16 A.R.S., requires that the trial court consider the circumstances before dismissing a case. Whether to allow the dismissal is within the trial court's discretion. *State ex rel. Corbin v. Portland Cement Ass'n,* 142 Ariz. 421, 690 P.2d 140 (App.1984). In exercising that discretion, the trial court must determine whether the dismissal would result in a violation of the defendant's substantial legal rights. *Schoolhouse Educational Aids, Inc. v. Haag,* 145 Ariz. 87, 699 P.2d 1318 (App.1985). Where, for example, a plaintiff reasonably believes after diligent investigation that the complaint named the wrong individuals as defendants and obtains a dismissal by order of the court, only to discover after the statute of limitations had run that the correct parties had been named, relief under § 12–504 may

be appropriate. The trial court's discretion was required in determining whether dismissal was appropriate in the first place; it is only logical that its discretion also be required in determining whether a new action should be allowed. However, the savings statute was not intended to provide relief for those who dismiss an action because of their own folly in failing to ascertain the facts necessary for deciding whether to do so, or for those who have failed to diligently pursue their cases and want to file a new action so that they may start the "Rule V clock" running again.

■ Where an action is terminated for lack of prosecution, relief under the savings statute should only be granted where the plaintiff demonstrates that despite diligent pursuit of the case, it was dismissed. To hold otherwise would undermine the policies the savings statute was intended to serve and emasculate Rule V by providing an out for litigants who, for no good reason, fail to comply with the rule. Where the dismissal date passes unnoticed as a result of an error which may or may not amount to a legal excuse under Rule 60(c), and the case is dismissed for lack of prosecution, there still may be sufficient grounds for relief under the savings statute particularly where the parties are engaged in active litigation. Perhaps a defendant was served but disappeared after answering the complaint, making discovery impossible. Or perhaps the plaintiff's medical status was unstable throughout the majority of the time the action was pending, seriously impeding vigorous prosecution of the case. Assuming the plaintiff demonstrates diligent efforts under the circumstances, relief under the savings statute may be warranted.

To a large extent the test articulated in *Flynn* is derived from the test in *Gorman.* Recognizing the similarities and the differences between Rule 60(c) and the savings statute, however, both in terms of the relief available and the factors justifying relief under each, we conclude that while a litigant may be entitled to relief under both provisions under certain circumstances, the two are significantly distinct. The savings statute coexists with and is not superfluous to the rule.

■ We now turn to the question of whether the trial court correctly denied Flynn leave to file a new complaint under A.R.S. § 12–504. The trial court must be granted broad discretion in determining whether to grant relief under the savings statute and, absent an abuse of that discretion, we will not disturb its decision on appeal. The court of appeals, in applying the correct test, found that because the record demonstrated Flynn's substantial lack of diligence in pursuing the claim, the trial court did not abuse its discretion in denying his claim. We agree. Flynn's conduct was not reasonable. Defendants' carriers with whom his trial counsel had been in contact were not notified that litigation had been commenced until six months after the complaint was filed. The complaint was not served until nine months after it was filed. Flynn granted some of the defendants an open extension of the time for filing their answers even though he knew the case had been placed on the inactive calendar and that the dismissal date of November 24, 1986, was fast approaching. He did not initiate any discovery, failed to respond to the discovery propounded by defendants, and waited until just four days before the dismissal date before seeking a continuance on the inactive calendar. Even then, he did not seek accelerated oral argument on his motion and simply allowed the dismissal date to come and go.

We have already found that Flynn failed to diligently and vigorously prosecute the case, the second prong of the test. The lawsuit was filed and permitted to languish. Even assuming he was engaging in vigorous settlement negotiations, as Flynn contends, it does not change the fact that Flynn was dilatory in the prosecution of his claim.

Finally, although the case is now barred by the statute of limitations and in balancing the prejudice in that regard it appears that the hardship is greatest upon Flynn, all factors must be considered together. Under the circumstances, we con-

clude that Flynn failed to sustain his burden of establishing circumstances justifying relief under A.R.S. § 12–504.

## 3. Additional Issues

Flynn raises two additional issues, neither of which merit reversal. First, he claims that because the trial court, in its April 7, 1987 minute entry, did not expressly state that it considered his reply memoranda to the defendants' response to Flynn's motion for reconsideration, filed on April 3, 1987, the court must not have considered it, and therefore, the formal order which provided that the court considered all memoranda was erroneous. There is nothing in the record to support this argument. Even assuming the trial court did not consider the reply before entering the minute entry, Flynn brought the matter to the trial court's attention in his objections to the form of order. Additionally, the terms of the judgment are controlling. *See McFadden v. McFadden*, 22 Ariz. 246, 196 P. 452 (1921). These factors support the inference that the trial court did consider the reply and rejected Flynn's arguments. Assuming the trial court failed to consider Flynn's reply memorandum, Flynn has the burden of establishing prejudice, *Gutierrez v. Gutierrez*, 20 Ariz. App. 388, 513 P.2d 677 (1973), which will not be presumed but must appear affirmatively from the record, *Rimondi v. Briggs*, 124 Ariz. 561, 606 P.2d 412 (1980); prejudice has not been established here.

Second, Flynn argues Rule V is discriminatory and constitutionally infirm as applied to residents of Maricopa and Pima counties. Flynn fails to specify how the administrative rule, designed to promote judicial expediency and efficiency, is constitutionally flawed. Moreover, we find the rule provides ample safeguards against unfairness, anticipating that continuances of cases on the inactive calendar may be justified under the circumstances.[3] This argument is meritless.

## B. *Jepson v. New*

We first address the question of whether the trial court abused its discretion in denying the Jepsons' motion to set aside the dismissal of the lawsuit under Rule 60(c)(6), which requires that we revisit our decision in *Gorman*. Citing *Davis v. Davis, supra,* we stated that "to obtain relief under Rule 60(c)(6), Gorman must show 'extraordinary circumstances of hardship or injustice' other than or in addition to those circumstances set out in clauses (1) through (5)." 152 Ariz. at 182, 731 P.2d at 77. We distinguished *Gorman* from *Bickerstaff*, noting that the record revealed the parties were actively involved in the prosecution of the case.

> Uniform Rule V should be used to dispose of abandoned cases and to encourage litigants to resolve their disputes quickly. It should not be used to trap the unwary or the momentarily negligent.... Uniform Rule V(e) should not be used to win a case by avoiding trial on the merits, unless the case, in fact, is not being prosecuted vigorously.... *Bickerstaff* is not a weapon to be used to deny relief to those who are pursuing their claims and seeking their day in court.

152 Ariz. at 183, 731 P.2d at 78.

We went on to caution that where Rule V transforms a dismissal without prejudice into one with prejudice because the statute of limitations has run, trial courts should take "an especially hard look at the actual circumstances of the case before it." *Id.*

We are not saying that relief under Rule 60(c)(6) is always available if the parties have not abandoned the case. Lawyers who fail to comply with Uniform Rule V(e) do so at their peril. *Bickerstaff, supra.* However, trial courts should

---

**3.** Indeed, the state bar committee note to the 1983 amendment of Rule V provides in part: "Where a party has not had a reasonable opportunity to undertake discovery essential for trial preparation, or there are good reasons for not being able to list trial witnesses and exhibits at the time provided in Section (a) of this rule, or the filing of a motion to set and certificate of readiness is premature or otherwise improper, the case should not be set for trial. These new provisions are intended to permit full and timely preparation for trial by all parties. The mere fact that the rule was designed to expedite litigation does not render it unconstitutional."

consider carefully a Rule 60 motion to set aside a Uniform Rule V(e) dismissal when, as here, there is evidence that (1) the parties were vigorously pursuing the case, (2) the parties were taking reasonable steps to inform the court of the case's status, and (3) the moving party will be substantially prejudiced by, for example, the running of the limitations period if the dismissal is not set aside. If all these factors are present, even doubtful cases should be resolved in favor of the party moving to set aside the dismissal. *Walker [v. Kendig]*, 107 Ariz. [510] at 513, 489 P.2d [849] at 852. [1971]. 152 Ariz. at 183–184, 731 P.2d at 78–79.

In *Jepson*, the court of appeals analyzed Rule 60(c) by focusing on *Bickerstaff* and *Gorman* and found that the facts fell within "a large intermediate area of cases neither vigorously prosecuted nor practically abandoned," where "the trial court's discretion counts for much." *Jepson*, 160 Ariz. at 198, 772 P.2d at 21. The court could not conclude the trial court had abused that discretion in finding that the Jepsons' discovery initiative was minor and that they were not "actively pursuing the case." *Id.*

The facts in *Gorman* and those in *Jepson* are strikingly similar. In both cases, there was little activity for nearly a year after the complaints were filed. Thereafter, the parties engaged in active discovery, even after the dismissal date passed, and filed their list of witnesses and exhibits, clearly believing the case to be very much alive. To the surprise of all parties in both cases, judgments of dismissal for lack of prosecution were entered in the midst of active litigation.

■ In determining whether a case is being diligently and vigorously prosecuted, as contemplated by the *Gorman* test, trial courts should look at the activities of all parties involved, not just the plaintiff's. Although the record must show that the plaintiff is actively pursuing the case, it may be that discovery initiated by other parties benefits the plaintiff as well. Additionally, discovery need not be formal to evince vigorous prosecution. As in *Jepson*,

where authorizations are provided for the release of medical information, discovery may be conducted by informal means.

■ Courts should also consider factors which may inhibit vigorous prosecution, notwithstanding diligence, such as impediments to serving defendants, a party's unstable medical condition and difficulties locating witnesses for either investigatory or formal discovery purposes. Based upon the totality of the circumstances, we find that the Jepsons were prosecuting their case with sufficient diligence and vigor.

In addition, we find that the parties were taking reasonable steps to inform the court of the status of their case. This, too, will depend on the circumstances of each case. Courts may consider discovery notices, correspondence, motions and any other documents which provide the court with notice that a case is being pursued. For example, where parties are engaged in informal discovery, what will be considered reasonable steps to inform the court of the case's status will be different than where they are engaging in formal discovery because there is no requirement that the court be apprised of such discovery. Unless the court sets a status conference, it may be unaware of the progress in such litigation. In *Jepson*, the record reveals that the case was formally and informally active both before and after the dismissal date. The trial court was apprised of the status of the litigation by the pleadings and other documents filed such as discovery notices and the list of witnesses and exhibits. We found similar steps to be reasonable in *Gorman*, and we find them reasonable here.

Finally, in *Jepson* as in *Gorman*, extraordinary circumstances justify granting relief. Both actions were dismissed in the midst of active litigation, and the Rule V dismissal came after the statute of limitations had run. The Jepsons, like Gorman, lost their claims despite diligent prosecution only because of a rule of practice designed to promote expediency and efficiency but which resulted in injustice.

A party seeking relief under Rule 60(c)(6) must also establish that he acted promptly in seeking relief and that he had a meritorious claim. *Gorman, supra,* 152 Ariz. at 183, 731 P.2d at 78; *Bickerstaff,* 141 Ariz. at 631, 688 P.2d at 639. Although neither the trial court nor the court of appeals reached these issues, the record before us clearly establishes the satisfaction of both requirements. In concluding, we note Rule 60(c)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Webb v. Erickson,* 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982) (*quoting Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949)). Here, the denial of relief from the judgment of dismissal, entered in the midst of active litigation, undermines rather than accomplishes justice. We find that the Jepsons satisfied their burden of establishing grounds for relief under Rule 60(c)(6), and the trial court abused its discretion in denying relief. In light of this determination, we do not address the question of whether the Jepsons are entitled to relief under the savings statute.

That portion of the court of appeals decision in *Jepson* affirming the denial of relief under Rule 60(c) is vacated and we remand the case to the trial court with instructions to set aside the judgment of dismissal and to enter reasonable deadlines for compliance with Rule V. The decisions of the court of appeals and the trial court in *Flynn* are affirmed.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

FELDMAN, Vice Chief Justice, concurring in part, dissenting in part.

I concur in the decision, with the exception of the portion of section 2 dealing with the standards for relief under Rule 60(c)(6), Ariz.R.Civ.P., 16 A.R.S., and A.R.S. § 12–504. Op. at 272–274, 792 P.2d 735–737. In that section, the court attempts to distinguish the criteria that will support relief under the rule from those justifying relief under the statute. The majority opinion actually succeeds in distinguishing Rule 60(c)(6) from A.R.S. § 12–504 solely on the type of relief sought—reinstatement of a cause of action under the rule, as opposed to commencement of a new action under the savings statute.

In my view, this approach fails to articulate the difference between the substantive analysis applicable to the rule and that applicable to the statute. Despite a valiant struggle, the opinion simply does not explain how the standard for relief under the statute differs from that under the rule. If diligence is the hallmark for relief under the rule, *see Gorman v. City of Phoenix,* 152 Ariz. 179, 183, 731 P.2d 74, 78 (1987), and diligence is also the prime requisite for relief under the statute as interpreted by the majority, then why would the legislature have enacted the statute to supplement the rule? We must assume that the legislature was aware of the existence of the Rules of Civil Procedure; the statute, therefore, must have been intended to provide some form of relief not otherwise available under the existing rules of procedure.

Thus, I agree with the views expressed by Judge Fidel in *Jepson v. New:*

By conditioning savings statute relief upon a showing of diligent prosecution, [the court in *Flynn* has] blurred the issue of refiling under § 12–504 with the issue of reinstatement under Rule 60(c)(6). The two are separate and distinct. As we have previously pointed out, a plaintiff able to respond to Rule V dismissal by showing reasonable diligence would qualify for reinstatement under 60(c)(6) and under *Gorman;* he thus would have no reason to invoke § 12–504. Correlatively, under *Flynn,* a plaintiff who had failed to show sufficient diligence to achieve reinstatement under Rule 60(c)(6) would likewise fail to qualify for refiling under the savings statute. The impact of *Flynn* would thus be to excise dismissals for lack of prosecution from the ambit of § 12–504. In our view, this contravenes both the explicit language and remedial purpose

of [the statute]. For these reasons, we decline to follow *Flynn*.

*Jepson v. New*, 160 Ariz. 193, 201, 772 P.2d 16, 24 (Ct.App.1989) (*citing Flynn v. Cornoyer–Hedrick Architects and Planners, Inc.*, 160 Ariz. 187, 772 P.2d 10 (Ct.App. 1988)).

Therefore, in order to give the statute meaning, I would adopt the standard applied by the court of appeals in *Jepson*, which focuses on comparative prejudice, and reject that applied in *Flynn*, which focuses strictly on diligence. Any other position fails to give meaning to the legislation.

CORCORAN, J., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, LACAGNINA, J., Court of Appeals, Division Two, was designated to sit in his stead.