NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

WILLIAM HILLER, an individual; LAURENCE M. BERLIN, on behalf of
the estate of SUZANN RANDT a.k.a. SUZANN HILLER,
*Plaintiffs/Appellants*,

*v.*

HUALAPAI MOUNTAIN MEDICAL CENTER, L.L.C., a North Carolina
limited liability company, d/b/a HUALAPAI MOUNTAIN MEDICAL
CENTER; HUALAPAI MOUNTAIN MEDICAL PROFEES, L.L.C., an
Arizona limited liability company, d/b/a HUALAPAI MOUNTAIN
MEDICAL CENTER; HUALAPAI MOUNTAIN MEDICAL CENTER
MANAGEMENT, L.L.C., a North Carolina limited liability company,
d/b/a HUALAPAI MOUNTAIN MEDICAL CENTER; MEDCATH
INCORPORATED, a North Carolina corporation; MEDCATH
CORPORATION, a Delaware corporation; DOUGLAS BUSHELL, M.D.;
MIKE IMHOLZ, R.N.; GRACE WOOD, R.N.; FAITH MARIE SMITH, the
natural born child of Suzann Randt; MICHAEL DANIEL SMITH, the
natural born child of Suzann Randt,
*Defendants/Appellees*.

No. 1 CA-CV 14-0087
FILED 7-30-2015

---

Appeal from the Superior Court in Mohave County
No. S8015CV201101627
The Honorable Charles W. Gurtler, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Law Office of Bradley L. Booke, Jackson, WY
By Bradley L. Booke
*Counsel for Plaintiffs/Appellant*s

Slattery Petersen PLLC, Phoenix
By Elizabeth A. Petersen
*Counsel for Defendant/Appellee Michael Imholz, R.N.*

Quintairos Prieto Wood & Boyer LLC, Phoenix
By Thomas G. Bakker
*Counsel for Defendant/Appellee Douglas Bushell, M.D.*

Sanders Parks, Phoenix
By Mandi J. Karvis
*Counsel for Defendant/Appellee Hualapai Mountain Medical Center*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Peter B. Swann joined. Judge Lawrence F. Winthrop dissented.

---

**C A T T A N I**, Judge:

**¶1** William Hiller and the estate of Suzann Randt (collectively, "Hiller") appeal from the superior court's order dismissing his wrongful death action for failure to prosecute and for failing to follow court orders. For reasons that follow, we reverse.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** On October 27, 2010, Suzann Randt, a critically-ill indigent woman with terminal liver cancer, died after seeking treatment for abdominal pain at Hualapai Mountain Medical Center ("HMMC").

2

Randt's husband, William Hiller,[1] sued HMMC, Kingman Hospital Inc.,[2] Douglas Bushell, M.D., Mike Imholz, R.N., and Grace Wood, R.N. (collectively, the "defendants"). The complaint asserted that, rather than providing necessary medical care, emergency room personnel at HMMC tied Randt with a bed sheet into a wheelchair and left her in a waiting area. Police officers, responding to HMMC's request that Randt be removed from the premises, found her dead in the wheelchair. The complaint alleged several causes of action, including: wrongful death; medical malpractice; negligent hiring, training, and management; negligence per se; assault and battery; and abuse of a vulnerable adult. The defendants individually answered Hiller's complaint by March 9, 2012. The complaint and responsive pleadings framed the central dispute as whether the defendants had appropriately evaluated Randt and offered her proper medical care, as well as any causal connection between the defendants' conduct and Randt's death.

¶3        Beginning in June 2012, several defendants moved to dismiss the case, arguing that Randt's two adult children were indispensable parties because they were statutory beneficiaries under the wrongful death statutes. While that motion remained pending, HMMC (later joined by other defendants) moved to dismiss based on Hiller's failure to attach preliminary expert opinion affidavits as required by Arizona Revised Statutes ("A.R.S.") § 12-2603.[3] The superior court granted Hiller leave to amend the complaint to include the requisite affidavits, and Hiller filed compliant preliminary expert affidavits in September 2012.

¶4        By October 2012, in supplemental briefing on the indispensable party motion, Hiller indicated that Randt's daughter had been located in an Oregon prison, but that Hiller was unable to speak with her because of her mental health issues. The superior court denied the motion to dismiss, but ruled the adult children were indispensable parties

---

[1]       The superior court appointed a guardian ad litem ("GAL") for William Hiller in December 2011 due to diminished mental competency.

[2]       The superior court later granted summary judgment for Kingman Hospital on the grounds that it had only purchased HMMC's assets after HMMC ceased operations, and had not become HMMC's successor in interest. That ruling is not challenged on appeal.

[3]       Absent material revisions after the relevant date, we cite a statute's current version.

and gave Hiller leave to amend the complaint to name Randt's adult children as involuntary plaintiffs.[4]  The court also ordered Hiller to seek appointment of a GAL for Randt's daughter, and to either locate and personally serve Randt's son or serve him by publication if necessary.

**¶5**        In mid-December 2012, Hiller filed an amended complaint naming Randt's adult children as statutory beneficiaries.  Hiller served Randt's daughter on January 31, 2013, but did not seek appointment of a GAL for the daughter, or take additional steps to locate Randt's son or otherwise attempt to serve him by publication.

**¶6**        In late October 2013, the defendants filed a joint motion to dismiss for failure to prosecute and failure to comply with court orders.  In response, Hiller's counsel acknowledged inefficient prosecution of the case, but argued that Hiller had not abandoned the case and that the delay related to "the unexpected loss of substantial members of [] counsel's staff over a short period of time, without any corresponding reduction in caseload."  The superior court granted the motion to dismiss.

**¶7**        Hiller timely appealed.  We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**¶8**        We review a dismissal for failure to prosecute for an abuse of discretion.  *Slaughter v. Maricopa County*, 227 Ariz. 323, 326, ¶ 14, 258 P.3d 141, 144 (App. 2011); *see also Quigley v. City Court*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (App. 1982) ("An 'abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.").  Dismissal is only appropriate when a delay, given all of the circumstances, demonstrates that the plaintiff has effectively abandoned the action or that the adverse party is prejudiced by plaintiff's delay.  *Cooper v. Odom*, 6 Ariz. App. 466, 469, 433 P.2d 646, 649 (1967).  In assessing failure to prosecute, the superior court considers the activities of both parties, the information provided to the court regarding the status of the case, and other factors that may explain or excuse lack of diligence in prosecuting the case.  *Jepson v. New*, 164 Ariz. 265, 276, 792 P.2d 728, 739 (1990).

**¶9**        Arizona courts have long recognized a preference for resolving cases on their merits.  *See, e.g.*, *Clemens v. Clark*, 101 Ariz. 413, 414, 420 P.2d 284, 285 (1966) (reiterating preference to "decide cases on their

---

4        Hiller has not challenged the court's ruling that the adult children were indispensable parties.

merits and not to punish litigants because of the inaction of their counsel"); *Walker v. Kendig*, 107 Ariz. 510, 512, 489 P.2d 849, 851 (1971) (stating that, although dismissal from inactive calendar for lack of prosecution is without prejudice, "such an order must be issued only after careful consideration because justice requires that when possible a matter be determined upon its merits"); *Montano v. Browning*, 202 Ariz. 544, 546, ¶ 4, 48 P.3d 494, 496 (App. 2002). Here, the superior court dismissed the case more than two months before the first scheduled trial date even though all of the relevant documentary evidence had been disclosed and even though Hiller's counsel had avowed they were prepared to go to trial. The court did not address any alternatives to dismissal and dismissed the case notwithstanding the absence of any prior warnings. Moreover, the court ordered dismissal—the death knell to the client's case—without a finding that Hiller himself, rather than his attorney, was at fault for the delay. *Cf. Lund v. Donahoe*, 227 Ariz. 572, 581, ¶¶ 33–34, 261 P.3d 456, 465 (App. 2011) (describing the purpose of a "culprit hearing," which assesses whether lawyer or party should be held responsible for a discovery violation, as "protecting a party from dispositive sanctions when the fault lies only with counsel").

¶10 Although Hiller should have complied with the court's order directing him to seek the appointment of a GAL for Randt's daughter, his failure to do so does not justify dismissal. After Hiller advised the court that the daughter had been served but may have mental health issues requiring appointment of a GAL, the court could have done so *sua sponte*. *See* Ariz. R. Civ. P. 17(g) (authorizing superior court to appoint a GAL for an incompetent person not otherwise represented in the action). Moreover, although the statutory beneficiaries' interests are aligned regarding third-party liability in a wrongful death action, any recovery to which the daughter might be entitled would theoretically diminish Hiller's potential recovery. *See* A.R.S. § 12-612(C) (recovery in wrongful death action distributed proportionally among statutory beneficiaries). Hiller's counsel was not representing the daughter and his responsibilities regarding the daughter were arguably satisfied by locating her, amending the complaint and serving her with a copy of the complaint. Similarly, although Hiller should have served Randt's son, that failure did not warrant dismissal, particularly since the superior court made no finding that service by publication was no longer feasible given the scheduled trial date, and the court did not address whether other alternatives for dealing with the adult son had been considered.

¶11 The superior court's findings regarding the alleged prejudice suffered by the defendants does not withstand scrutiny. The court found,

for example, that, without Randt's adult children participating, the defendants could not be expected to initiate pre-trial discovery to investigate and defend against the merits of Hiller's allegations. But there is no indication as to what information Randt's two adult children (who apparently had not seen her in more than 15 years) could have provided regarding the merits of the case. And the record establishes that the defendants were well aware of the circumstances giving rise to the complaint. The parties had in fact disclosed and exchanged detailed information about all of the factual and legal claims asserted, including all relevant medical records, police records, records from the medical examiner concerning the cause of the decedent's death, and all of Randt's employment and income records. The parties had also identified and exchanged information concerning all proposed trial witnesses.

¶12 The superior court further found that the defendants had been prejudiced because the allegedly inordinate delay affected the ability of some of the defendants to timely seek reemployment after operations at HMMC ceased. But the case was dismissed prior to the initial trial date, and the asserted prejudice would have resulted even if Hiller had complied with every court directive and the case had gone to trial. Thus, this prejudice is not tied to Hiller's failure to comply with court orders. Moreover, the facts underlying the incident were known and would presumably have needed to be addressed by the defendants seeking employment regardless whether anyone pursued litigation following Randt's death.

¶13 Similarly, the court relied on the fact that the continued pendency of the action had to be documented and explained in various credentialing and insurance applications. Again, however, these facts are unrelated to Hiller's conduct and instead relate to the underlying incident resulting in Randt's death. Because this alleged prejudice is not linked to Hiller's delay, these facts are not a proper basis for dismissing the case.

¶14 The superior court also noted that more than three years had passed since the events giving rise to this action, resulting in potential memory issues for witnesses and in problems with conducting witness interviews and depositions. But such concerns overlook the fact that dismissal occurred prior to the first scheduled trial date, and thus are similarly unrelated to Hiller's failure to properly deal with Randt's adult children. More importantly, the concerns do not support dismissal in light of the discovery that had been conducted and given Hiller's avowal that he would be ready to proceed with trial on the first scheduled trial date.

¶15          Implicitly recognizing the weakness in the superior court's prejudice analysis, our dissenting colleague states that "the real prejudice to the defendants lies in the deleterious effect of continuing delay."  The dissent posits that although Hiller's counsel stated that he would have been ready for trial on the scheduled date, there is no reason to believe that by such date Hiller would have either located and served the adult son, or would have filed the petition to have a GAL appointed for the adult daughter.  The dissent further notes that even assuming this case survived to the scheduled trial date, the superior court would likely have either dismissed the case at that point for failure to join indispensable parties or would have continued the trial to some later date.

¶16          But any assessment of what "likely" would have happened by the time of trial is premature.  If the superior court had warned Hiller of the possibility the case would be dismissed, and if Hiller had thereafter immediately served the son by publication and had sought the appointment of a GAL for the decedent's adult daughter (or if the superior court had *sua sponte* appointed a GAL), it is entirely possible that the trial could have gone forward as scheduled.  Neither the defendants nor the superior court suggested any likelihood that the adult son or daughter has information critical to the resolution of the merits of this case.  And in any event, any determination by this court regarding whether the trial could have gone forward is speculative in light of the time remaining prior to trial during which Hiller or the superior court could possibly have cured any deficiencies relating to the decedent's son and daughter's status as plaintiffs.

¶17          In sum, the superior court has denied Hiller a decision on the merits based on a prejudice analysis that does not withstand scrutiny, and based on technical requirements imposed on Hiller without an express warning that failure to comply would result in outright dismissal.  Under the circumstances, Hiller has been denied access to justice, and we reverse the superior court's order dismissing the case.

## CONCLUSION

¶18          For the foregoing reasons, we reverse the dismissal and remand for further proceedings.

**W I N T H R O P**, Judge, Dissenting:

¶19          I respectfully dissent. The majority contends neither basis for the trial court's dismissal can withstand scrutiny. I disagree.

¶20          With regard to Hiller's failure to properly join Randt's adult children, an order that Hiller has failed to contest or otherwise address in this appeal, the majority overlooks several relevant factors. First, although the trial court could have *sua sponte* appointed a guardian ad litem for Randt's adult daughter, it had no obligation to do so; instead, it expressly directed Hiller to file the appropriate motion to designate a guardian ad litem. Hiller's failure to file the motion or otherwise seek an appointment of a guardian violated that explicit court order. Next, after October 2012, the record does not demonstrate that Hiller made any further attempts to locate Randt's adult son or serve him by publication, also in violation of the court order. Hiller did not request authorization to utilize an alternative method of service, did not seek a ruling that service by publication was not feasible under these circumstances, did not request reconsideration of the court's order or otherwise seek a judicial determination that the case should now proceed in the absence of the adult son. Another potential alternative, not raised or explored by Hiller, would have been to propose that, at a minimum, the mandatory settlement conference required by court rule proceed, and that the issue of the missing son be dealt with in a probate court setting as part of that court's consideration and approval of any such settlement.

¶21          From the time of the court's order to the filing of the motion to dismiss, Hiller had nearly one year to comply with the court's orders or take any of these alternative actions, and failed to do anything. Instead, Hiller only argued that the case had stalled because his attorney's office was short-staffed and had "fallen behind the deadlines in this case." Without more, can this court really say the trial court abused its discretion in determining that Hiller had not demonstrated sufficient diligence or that such lack of diligence should be excused? I think not.

¶22          Hiller also failed to actively prosecute this case, and the real prejudice to the defendants lies in the deleterious effect of continuing delay. Even under the best case scenario, further delay here was inevitable. Hiller claims on appeal that he would have been ready for trial on the scheduled date; however, there is no reason to believe that by such date Hiller would have either located and served the adult son, or would have filed the petition to have a guardian ad litem appointed for the adult daughter, or would have scheduled and participated in a settlement conference as

mandated by Rule 16.1, Ariz. R. Civ. P.[5]  In other words, even assuming this case survived to the scheduled trial date, the trial court would likely have either dismissed the case at that point for failure to join indispensable parties and/or for failure to prosecute, or would have had to consider whether to continue the trial to some later date.  On this record, it is hard to imagine what type of good cause Hiller could present to the trial court to justify continuing the case at that point.

¶23        Finally, the majority argues dismissal was inappropriate because the trial court had never previously warned Hiller about potentially dismissing this case.  Defendants, however, had previously filed two other motions to dismiss based upon Hiller's failure to comply with Arizona statutes and rules.  The trial court denied these motions, but directed Hiller to correct the deficiencies in his complaint, and ordered that Randt's adult children be properly joined and served.  Suffice to say Hiller was implicitly aware that continued failure to comply with explicit court orders, or to advance the case on the merits, could result in the dismissal of his case.  *See* Rule 41(b), Ariz. R. Civ. P.; *see also* Rule CV-2, Mohave County Local Rules of Practice.

¶24        The trial court was in the best position to evaluate the credibility of Hiller's actions and his excuses for inaction, and to determine the significance of the prejudice caused by Hiller's failure to comply with the court's orders.  I see no basis on appeal to conclude that the trial judge abused his discretion, and I therefore respectfully dissent from my colleagues' conclusion to the contrary.



Ruth A. Willingham · Clerk of the Court
F I L E D : RT

---

[5]        The majority emphasizes Hiller's avowal that he didn't need to take witness depositions and would have been ready for trial on the scheduled trial date; however, Hiller himself alternatively requested that the court deadlines be extended in order for the parties to conduct the necessary depositions.