822 P.2d 1

**MISSION INSURANCE COMPANY,**
a California corporation,
Plaintiff–Appellant,

v.

**CASH, SULLIVAN & CROSS,** an Arizona
corporation; William J. Murphy and
Jane Doe Murphy, husband and wife,
Defendants–Appellees.

No. 1 CA–CV 90–031.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 27, 1991.

Review Granted Jan. 21, 1992.*

* Cameron, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Gallagher & Kennedy by Kevin E. O'Malley, Phoenix, and Simon, Buckner & Haile by Alan Buckner, Marina Del Rey, Cal., for plaintiff-appellant.

Jones, Skelton & Hochuli by Georgia A. Staton, William R. Jones, Jr., Phoenix, for defendants-appellees.

## OPINION

BROOKS, Presiding Judge.

Mission Insurance Company (Mission) has appealed from the trial court's denial of its motion for relief from judgment under Rule 60(c)(6), Arizona Rules of Civil Procedure, and its alternative motion for permission to refile its complaint under A.R.S. section 12–504, the "savings statute."[1] We find no abuse of discretion and therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

On April 30, 1986, Mission filed an action against Cash, Sullivan & Cross, an insurance agency, and its agent, William J. Murphy (collectively "CSC"), alleging that Murphy's misrepresentation had induced Mission to issue an insurance policy and seeking to recover the more than $3,000,000 that it had paid pursuant to a claim on that policy. The California law firm of Simon, Buckner & Haile represented Mission in the action. Attorney William Z. Elliott, an associate of the firm, was responsible for handling the litigation. Mission also retained local counsel, Harris & Palumbo, P.C.

Before filing suit, Mission took sworn statements from various key witnesses. Later, the parties conducted discovery, serving and answering interrogatories and requests to produce documents. Both parties filed lists of witnesses and exhibits, and on April 23, 1987, Mission filed a motion to set and certificate of readiness. CSC filed a controverting certificate, which the trial court overruled, setting trial for September 28, 1987.

Meanwhile, Mission was also a party in a separate action, *State v. Mission Insurance Co.*, Maricopa County Superior Court cause no. CV 87–06289. In that case, Judge Marilyn A. Riddell had appointed a receiver for Mission and had enjoined it and its agents from "[c]ommencing, prosecuting, continuing or enforcing any suit or proceeding in the name or on behalf of Mission Insurance Company" until the termination of the receivership, except by leave of the court. On August 11, 1987, CSC informed Judge Norman D. Hall, to whom the instant case was assigned, of the

1. Arizona Revised Statutes section 12–504 provides in part:

If an action timely commenced is terminated by ... dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

injunction. Judge Hall rescheduled the trial for December 28, 1987, and set a status conference for October 16. At the conference, Judge Hall informed the parties that he would consider a motion to lift the injunction. Pursuant to Rule V, Superior Court Uniform Rules of Practice, Judge Hall then continued the case on the inactive calendar for dismissal on April 18, 1988.[2] In February of 1988, the case was again continued on the inactive calendar for dismissal on August 18, 1988.

On July 18, 1988, Mission filed a new list of witnesses and exhibits. CSC filed its own list on July 28, along with alternative motions, one to dismiss the complaint for failure to prosecute, the other seeking security for court costs should the injunction be lifted. On August 18, 1988, Mission filed a second motion to set and certificate of readiness.

Trial was set for December 12, 1988. On September 21, the trial court denied CSC's alternative motions without prejudice, giving Mission 90 days within which to obtain the court's leave to modify the injunction. Mission's local counsel, who had moved for permission to withdraw based upon attorney Elliott's refusal to respond to his repeated requests to secure a cost bond, was permitted to do so.

Some time in the fall of 1988, Elliott informed Mission that he needed $10,000 for a cost bond in order to lift the injunction. On November 7, Mission issued a check in that amount and sent it to Elliott's firm, but Elliott never filed a motion to lift the injunction. On November 15, 1988, the trial court vacated the December 12 trial date and placed the case on the inactive calendar for dismissal on February 15, 1989. The case was dismissed without prejudice on March 16, 1989.

Simon, Buckner & Haile hired George M. Dell, a retired judge of the California Superior Court, to investigate the matter. The investigation led Judge Dell to conclude that Elliott had engaged in a pattern of malfeasance on this and other files and that he had purposely engaged in a course of conduct directed at hiding his malfeasance from Mission and his firm.[3]

Mission then retained new local counsel, who filed a motion for relief from the judgment pursuant to Rule 60(c), Arizona Rules of Civil Procedure, and an alternative motion for leave to file a new action pursuant to A.R.S. section 12–504. After oral argument, the court denied relief, finding as follows:

3. The Plaintiff's failure to comply with the orders of the court occurred because one of its law firm's lawyers, William Z. Elliott, failed to proceed with the lawsuit and deliberately misrepresented that he had, in fact, filed appropriate motions and taken other action on behalf of the Plaintiff.

4. In reviewing the actions of Mr. Elliott, the court does not find that "extraordinary circumstances" exist which would justify relief pursuant to Rule 60(c)(6) as set forth in that rule or *Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 688 P.2d 637 (1984). *See also Cline v. Ticor Title Ins. Co. of California*, 154 Ariz. 343, 742 P.2d 844 (App. 1987).

.    .    .    .    .

6. Plaintiff continually failed to abide by the orders of the court and simply sat on its rights rather than vigorously pur-

---

2. The case had first been placed on the inactive calendar in January of 1987. Uniform Rule V provides in pertinent part:

(e) **Inactive Calendar.** The clerk of the court or court administrator shall place on the Inactive Calendar every case in which a Motion to Set and Certificate of Readiness has not been filed within nine months after the commencement thereof.... All cases remaining on the Inactive Calendar for two months shall be dismissed without prejudice for lack of prosecution, and the court shall make an appropriate order as to any bond or

other security filed therein, unless prior to the expiration of such two months period:

(1) A proper Motion to Set and Certificate of Readiness is filed; or

(2) The court, on motion for good cause shown, orders the case to be continued on the Inactive Calendar for a specified period of time without dismissal.

3. Elliott's misconduct eventually resulted in his disbarment from the practice of law in California.

sue its claim to a conclusion over a period verging on two years. As a result, Plaintiff is not entitled to the relief provided by Rule 60(c)(6), Arizona Rules of Civil Procedure, nor under the savings statute, A.R.S. § 12–504.

This appeal followed.

## STANDARD OF REVIEW

An order denying relief under Rule 60(c)(6) will be reversed on appeal only for an abuse of discretion. *Gorman v. City of Phoenix,* 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987). The same standard applies on review from an order denying relief under A.R.S. section 12–504. *Flynn v. Cornoyer–Hedrick Architects,* 160 Ariz. 187, 191, 772 P.2d 10, 14 (App.1988), *aff'd sub nom. Jepson v. New,* 164 Ariz. 265, 792 P.2d 728 (1990) (vacating *Jepson v. New,* 160 Ariz. 193, 772 P.2d 16 (App.1989)).

## DILIGENCE

■ Relief under Rule 60(c)(6) is warranted only if the plaintiff shows " 'extraordinary circumstances of hardship or injustice,' other than or in addition to those circumstances set out in clauses (1) through (5)." *Gorman,* 152 Ariz. at 182, 731 P.2d at 77 (quoting *Davis v. Davis,* 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1985)) (other citations omitted). The plaintiff must demonstrate active, vigorous prosecution of the case; "diligence is the hallmark." *Gorman,* 152 Ariz. at 183, 731 P.2d at 78.

Our supreme court has consistently declined to set forth any specific set of circumstances that would qualify as extraordinary, unique, or compelling under Rule 60(c)(6). *Id.* at 182, 731 P.2d at 77. Nevertheless, *Gorman* and *Jepson* provide ample guidance for us in considering this question.

First, *Jepson* demonstrates that the level of activity in the early stages of a lawsuit is a less important consideration than activity toward the end. In *Jepson,* although virtually no activity had taken place before the case was first extended on the inactive calendar, from then on, the parties were actively engaged in prosecuting the case.

164 Ariz. at 276, 792 P.2d at 737. Similarly, the parties in *Gorman* were vigorously pursuing the case up to and even after its dismissal. 152 Ariz. at 180–81, 731 P.2d at 75–76.

In contrast, the instant case was active only in its infancy. That activity came to a halt soon after Judge Riddell issued the injunction. All that followed was a hollow attempt to comply with Uniform Rule V: hollow because it completely ignored the injunction, which was the major impediment in the case. The case had been virtually dormant for almost two years when it was dismissed.

Furthermore, this case is unlike *Gorman* and *Jepson* in a more important respect. Dismissal here did not occur merely because a Uniform Rule V dismissal deadline passed unnoticed. The injunction had brought the case to a stand-still, and the trial court made counsel aware that the case could not proceed unless the injunction were lifted. Under the circumstances, Mission's failure to take the steps necessary to remove the one obstacle in its path demonstrates a singular *lack of diligence* in pursuit of the case. Accordingly, barring application of the exception that Mission advocates (which we discuss below), we find no abuse of discretion in the trial court's denial of relief under Rule 60(c)(6).

■ Mission's bid for relief under the savings statute stands or falls upon the same exception for it suffers from the same defect. "[T]he diligence necessary to obtain relief under Rule 60(c) should also be part of the standard for relief under the savings statute." *Jepson,* 164 Ariz. at 273, 792 P.2d at 736.

## THE "POSITIVE MISCONDUCT" RULE

■ As a general rule, the client is charged with the actions and omissions of its attorney. *See, e.g., United Imports and Exports, Inc. v. Superior Court,* 134 Ariz. 43, 46, 653 P.2d 691, 694 (1982); *Coconino Pulp & Paper Co. v. Marvin,* 83 Ariz. 117, 317 P.2d 550 (1957). Mission urges that the circumstances of this case warrant an exception to the rule.

Mission maintains that the "positive misconduct" of attorney Elliott created the sort of "extraordinary circumstances" necessary to obtain relief under Rule 60(c)(6). Citing cases from California and some federal circuits, Mission argues that when an attorney's conduct is so egregious as to constitute an abandonment of the client, the attorney's neglect of the case will not be ascribed to the client, and relief will be granted. *See, e.g., Daley v. County of Butte,* 227 Cal.App.2d 380, 38 Cal.Rptr. 693 (1964) (attorney's misconduct, which included failure to serve process, to appear in court, to communicate with client, other counsel, and court, and to carry out client's efforts to obtain substitute counsel, effectively deprived client of representation).

Mission recognizes that no Arizona case has expressly adopted the position that it advocates, but asserts that our supreme court has indicated a willingness to do so:

> Plaintiff argues and we agree that some courts have allowed relief when counsel's neglect was inexcusable. However, in those cases, the inexcusable neglect amounted to a *total abandonment* of actual representation. *See, e.g., Boughner v. Secretary of Health, Education & Welfare,* 572 F.2d 976, 977 (3d Cir.1978) (attorney's "egregious conduct amounted to nothing short of leaving his clients unrepresented"); *United States v. Cirami,* 563 F.2d 26, 34 (2d Cir.1977) (attorney's failure to act caused by a mental disorder which "induced him both to neglect his duties and to assure his client that he was attending to them"). Such a case is not before us.

*Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 633, 688 P.2d 637, 641 (1984)

(emphasis added). *See also Carroll v. Abbott Laboratories,* 32 Cal.3d 892, 187 Cal. Rptr. 592, 654 P.2d 775 (1982).

Like *Bickerstaff,* however, this case does not require us to determine whether an attorney's total abandonment of representation warrants any relief beyond that obtainable in an action for malpractice.[4] We do not believe that the actions of Elliott and his law firm may be characterized as a "total abandonment of actual representation."[5]

The area of Elliott's neglect and misconduct in representing Mission was critical, but narrowly circumscribed. He had been active in the case insofar as discovery was concerned, and he had also filed two motions to set, the second *after* Judge Hall indicated a willingness to consider lifting the injunction. He had sought and obtained from Mission the funds necessary to post a bond for costs. In contrast, the cases upon which Mission relies reveal neglect that was consistent, wide-ranging, and of long duration.

We find this case to be similar to *Carroll,* in which the trial court ordered dismissal because the plaintiff's attorney had failed to comply with an order compelling discovery. The trial court later granted the plaintiff's motion for relief from judgment, finding that although the attorney had been "grossly negligent in the representation of plaintiff's interests," the sanction of dismissal was too harsh. 32 Cal.3d at 897, 187 Cal.Rptr. at 594, 654 P.2d at 777. The California Supreme Court reversed, stating:

> What *Daley, Orange Empire [Nat'l Bank v. Kirk,* 259 Cal.App.2d 347, 66

---

**4.** Although this is not the case in which to decide the question, we observe that such a rule, if ever adopted, should be applied most sparingly. We agree with the following language from *Carroll:*

> "When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law." Given this concern, the *Daley* exception should be narrowly applied, lest negligent attorneys find that the simplest way to gain the twin goals of rescuing clients from defaults and themselves from malpractice liability, is to rise to ever greater

heights of incompetence and professional irresponsibility while, nonetheless, maintaining a beatific attorney-client relationship.

32 Cal.3d at 900, 187 Cal.Rptr. at 596, 654 P.2d at 779 (quoting *Transit Ads, Inc. v. Tanner Motor Livery, Ltd.,* 270 Cal.App.2d 275, 282, 75 Cal.Rptr. 848, 852 (1969)).

**5.** Other attorneys at Simon, Buckner & Haile were at least partially responsible for representing Mission in this matter. No one has suggested that the firm itself "totally abandoned" Mission.

Cal.Rptr. 240 (1968)] and *Buckert* [*v. Briggs*, 15 Cal.App.3d 296, 93 Cal.Rptr. 61 (1971)] have in common is a total failure on the part of counsel to represent the client: each attorney had de facto substituted himself out of the case. Under such circumstances it would have been unconscionable to apply the general rule charging the client with the attorney's neglect. The case before us is, however, quite different. Though counsel grossly mishandled a *routine* discovery matter, no abandonment of the client appears. ... In brief, though in connection with the production of documents, he obviously failed to give effective representation, he did not, in the words of the *Buckert* court, "obliterate the existence of the attorney-client relationship." (*Id.*, 15 Cal.App. 3d at p. 301, 93 Cal. Rptr. 61.)

32 Cal.3d at 900, 187 Cal.Rptr. at 596, 654 P.2d at 779.

The similarities between *Carroll* and the present case are striking. In *Carroll*, the attorney's failure related to a single part of wide-ranging case. The same is true here. Although Elliott "grossly mishandled" the matter of lifting the injunction, Mission has taken issue with no other aspect of his representation *in this case*.[6] In short, Elliott's failure was not so pervasive as to result in an "obliteration of the attorney-client relationship."

■ We recognize that Arizona courts have adopted a policy against attributing an attorney's neglect to the client when imposing sanctions for failure to comply with discovery orders. If the client is not at fault in such a case, the onerous sanction of dismissal will be highly disfavored. *See, e.g., Treadaway v. Meador*, 103 Ariz. 83, 436 P.2d 902 (1968); *Lenze v. Synthes, Ltd.*, 160 Ariz. 302, 772 P.2d 1155 (App. 1989); *Birds Int'l Corp. v. Arizona Maintenance Co.*, 135 Ariz. 545, 662 P.2d 1052 (App.1983).

■ We believe that this policy is properly limited to the imposition of sanctions for discovery abuses under Rule 37, Arizona Rules of Civil Procedure. That rule deals with the microcosm of discovery problems and permits the court to exercise its discretion in imposing a range of sanctions for the many varieties and degrees of discovery abuses. Such controversies may impede the parties' pursuit of the merits, but they do not, of themselves, indicate that a case is not moving toward resolution.

■ Uniform Rule V, on the other hand, deals with the macrocosm of the case itself. The rule was designed to standardize the exercise of a trial court's inherent power to dismiss cases for want of prosecution and to provide a convenient administrative practice by which to bring to the attention of the court and the attorneys involved the fact that ample time has elapsed in which to prepare a case for trial. *Campbell v. Deddens*, 93 Ariz. 247, 249–50, 379 P.2d 963, 964–65 (1963). The rule affords the court little leeway in responding to a plaintiff's failure to prosecute a case. Absent good cause for continuance, such cases "*shall* be dismissed without prejudice for lack of prosecution." Uniform Rule V(e) (emphasis added).

In summary, dismissal was warranted here because Mission, through its counsel, failed to take the steps necessary to bring its case to trial. Although Elliott's conduct was grossly negligent, it did not leave Mission unrepresented. We find no abuse of discretion in the trial court's refusal to grant Mission relief from the consequences of its attorney's lack of diligence.

### ATTORNEY'S FEES

■ CSC has requested an award of attorney's fees on appeal "pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure." Rule 21 does not provide a *sub-*

---

**6.** We find Elliott's apparent neglect of other files as well as his subsequent disbarment to be irrel-  evant to the result in this case.

*stantive* basis for an award of attorney's fees. It merely sets forth the *procedure* for requesting those fees in this court. CSC has cited no statute, decisional law, or contract that would entitle it to fees in this case. Its request for attorney's fees is therefore denied.

The judgment of the superior court is affirmed.

JACOBSON and CONTRERAS, JJ., concur.