909 P.2d 399

**Barbara Jean HAYNES,
Plaintiff–Appellee,**

v.

**SYNTEK FINANCE CORPORATION,
Defendant–Appellant.**

No. 1 CA–CV 93–0331.

Court of Appeals of Arizona,
Division 1, Department D.

April 11, 1995.

Reconsideration Denied June 9, 1995.

Review Denied Jan. 17, 1996.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Jones, Skelton & Hochuli by David C. Lewis, Phoenix, and Kirkpatrick & Kramer by Christopher W. Kramer, Flagstaff, for defendant-appellant.

Aspey, Watkins & Diesel by Louis M. Diesel and Zachary J. Markham, Flagstaff, for plaintiff-appellee.

## OPINION

VOSS, Judge.

Syntek Finance Corporation ("Defendant") was held liable after a jury trial for damages suffered by Barbara Haynes ("Plaintiff") resulting from her fall on a sidewalk at a Flagstaff apartment complex. On appeal, Defendant raises four issues. We affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was a tenant at the Country Club Estates Apartments in Flagstaff. On the evening of September 21, 1990, she fell and broke her leg while walking on a sidewalk within the apartment complex.

Plaintiff filed suit against Defendant on April 22, 1991, alleging that it owned and operated the apartment complex and that it was negligent because the sidewalk was decaying and poorly lighted. On June 14, 1991, Defendant filed its answer, admitting both ownership of the apartment complex and control of the "common area walkways" including the sidewalk at issue.

Discovery and other pretrial proceedings ensued. After postponing the trial date on two occasions, the trial court set the matter for trial on August 18, 1992. On July 29, 1992—less than three weeks before the trial was to begin and less than two months before the running of the statute of limitations—Defendant filed a motion to amend its answer, seeking to withdraw its admission that it owned the apartments and controlled the sidewalk where Plaintiff was injured. Defendant claimed:

> [D]efense counsel contacted Scott Miller, president of Syntek. Mr. Miller indicated that Syntek did not own, and has never owned Country Club Estates Apartments.... The deed, a public record at the time of filing of the complaint, shows that Wespac Investors Trust, a California real estate investment trust, owned the premises in question at the time of the accident.

Following briefing and oral argument, the trial court granted the motion to amend on August 6, 1992, stating:

> The Court finds that the Defendant Syntek failed to exercise due diligence concerning the ownership issue, and that its admission of ownership in its answer has placed Plaintiff at an unfair disadvantage, as Syntek belatedly disclaims ownership on the eve of trial. On the other hand, it would be unjust to allow a non-owner to be found liable. In attempting to be just to both parties, the Court orders as follows:
>
> . . . .
>
> 1. The Motion to Amend is granted.
>
> . . . .
>
> 3. Defendant Syntek shall pay any reasonable costs incurred by Plaintiff as a result of the trial postponement.
>
> 4. Defendant Syntek shall pay all of Plaintiff's reasonable costs incurred in discovery on the ownership issue from this day forward.
>
> 5. Defendant Syntek shall pay Plaintiff $5,000 as attorney's fees incurred in connection with the ownership issue. This sum must be paid at least 30 days prior to trial. If not timely paid, then Defendant Syntek will be estopped to deny ownership.

Defendant, in contemplation of filing a special action in this court, sought an interlocutory stay of paragraphs three, four, and five of the court's order. Plaintiff, on the other hand, filed a motion for reconsideration and a motion for an accelerated telephonic deposition of Mr. Scott Miller. When the trial court held a hearing on these motions on September 1, 1992, it stopped the proceedings so that a court reporter could be present. On the record, the court stated:

> Before the reporter came into Chambers, I had heard oral argument on the plaintiff's Motion for Reconsideration and the defendant's Motion for an Interlocutory Stay. I had ruled on those motions,

denying the Motion for Reconsideration and granting the Motion for an Interlocutory Stay.

After that, by consent of the parties, I began to hear oral argument on the plaintiff's motion to accelerate the taking of a telephonic deposition. During the course of that argument, [Defendant's counsel] made the statement that the named defendant, Syntek Finance Corporation, is part of an interlocking corporate structure that may have as many as 150 corporations and they are deliberately set up so that if somebody gets a judgment against one, you cannot pursue other entities in the enterprise, sounding very much as if these parties have deliberately created a situation making it difficult, if not impossible, for anyone being awarded 'a judgment against one of them to pursue that judgment and have it satisfied.

Having heard that, it now strikes the Court that it would be unjust to allow Syntek Finance Corporation to do what it has done here, which is, first, to admit ownership, then wait 16 months until the eve of trial, then to inform the Court that it was not the true owner, ask the Court for leave to amend to allow it to plead that it is not the owner. That's the motion that I heard earlier, some weeks ago. Having heard only that, it seemed to me that it would be unjust if Syntek truly is not the owner to have it responsible to pay a judgment which might be $50,000 or more, and it seemed that it would not be unduly burdensome to require the plaintiff then to do some digging and be prepared to deal with a claim that Syntek Finance Corporation was not the true owner.

Since that time I am advised this morning the plaintiff has done some discovery, is beginning to find all these layers and the various entities that are involved and the possible ownership and/or management of the property in question and we are just beginning to see the tip of the iceberg here as to how difficult this is going to be. And based on [the] statement [of Defendant's counsel] here this morning, it strikes the Court now that it was inequitable to allow Syntek Finance Corporation to wait as long as it did, having admitted ownership,

then to come in at the last minute before trial and deny ownership and throw the [Plaintiff] into the virtually impossible situation of trying to prove ownership and to pin liability on an entity that will respond to the judicial liability that may be established, that these defendants may have deliberately created a situation to be judgment proof.

If that's the case, then the equities shift radically and it would not be proper to allow Syntek at this point, or in July when this came up, to deny ownership.

. . . .

Unfortunately, we do not have on the record [the] comment [of Defendant's counsel] that so shocked the Court. But the way it struck me was this named defendant and the others that have been talked about are a part of a corporate set-up involving over 150 subsidiary corporations who are set up in such a way that if you went after one, you couldn't get to the others, as if such way (sic) that this was created to confound creditors and defeat justice. That's exactly the way it struck me, and it shocked me to the point that I stopped the proceedings and brought the reporter in here and told [Plaintiff's counsel] I would rehear his motion to reconsider. I think it's that grave.

When we talk about achieving a just result here, I look back at my minute entry of August the 6th dealing with the Motion to Amend the Answer. That states, "The Court finds that the Defendant Syntek failed to exercise due diligence concerning the ownership issue, and that its admission of ownership in its answer has placed plaintiff at an unfair disadvantage, as Syntek belatedly disclaims ownership on the eve of trial. On the other hand, it would be unjust to allow a non-owner to be found liable."

Well, I am reconsidering that second statement now under these conditions: where Syntek is part of a deliberate scheme of setting up a huge umbrella of labyrinthin[e] devices just deliberately confuses (sic) ownership and makes it very difficult to find and to prove.

Syntek has never proven to me that it is not the owner. My intention in allowing the amendment of the answer was simply to allow them to raise that as an issue.

But at this point, based on what was told to me this morning by defense counsel, it is ordered granting the Motion to Reconsider.

*Reporter's Transcript of Proceedings,* September 1, 1992, at 2–4, 14–15. The trial court then denied Defendant's motion to amend its answer.

The matter proceeded to trial and Defendant was estopped from arguing that it did not own or control the apartment complex. The court overruled Defendant's objections to photographs of other deteriorated sidewalks within the apartment complex. It also denied Defendant's motion for a directed verdict on the issue of notice of the dangerous condition, and refused a defense instruction concerning notice. The jury's verdict found that Plaintiff's damages amounted to $71,-216.65 and apportioned fifty-five percent (55%) of the fault to Defendant. The court then denied Defendant's motion for judgment notwithstanding the verdict and entered judgment in accordance with the verdict.

After the court denied Defendant's motion for new trial by formal order, Defendant timely appealed to this court, raising the following four arguments: (1) That the trial court abused its discretion by denying its motion to amend its answer; (2) that the trial court erred by denying the motion for directed verdict; (3) that the court abused its discretion by admitting in evidence photographs of other deteriorated sidewalks within the apartment complex; and (4) that the court erred by declining to give the Defendant's requested jury instruction on notice. We have jurisdiction pursuant to Arizona Revised Statutes Annotated section 12–2101(F)(1) (1994).

## DISCUSSION

A. *Denial of Defendant's Motion to Amend Answer.*

Defendant contends that the trial court abused its discretion by denying its motion to amend. Although the court's specific find-ings are unsubstantiated, the record nonetheless supports the court's decision to deny Defendant's motion in the interest of justice.

Rule 15(a), Arizona Rules of Civil Procedure, provides:

A party may amend his pleading ... by leave of court or by written consent of the adverse party. Leave to amend shall be freely given when justice requires.

It has long been recognized that amendments to pleadings should be liberally allowed in the interest of justice. *Owen v. Superior Court,* 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982). Trial on the merits of the claim is favored. *Id.* To justify denial of a motion to amend a pleading, there must be " 'undue' delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments[,] or undue prejudice to the opposing party." *Id.* (citing *Spitz v. Bache & Co.,* 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979)). "Prejudice is the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation." *Id.* Indeed, "denial [of a motion to amend a pleading] is deemed a proper exercise of the court's discretion when the amendment comes late and raises new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected, thus requiring delay in the decision of the case." *Id.* at 81, 649 P.2d at 284. Finally, denial of a motion to amend is left to the trial court's sound discretion and will not be disturbed absent a showing of an abuse of such discretion. *See Romo v. Reyes,* 26 Ariz.App. 374, 375, 548 P.2d 1186, 1187 (1976).

Here, we recognize as a threshold matter that the trial court did not modify its prior findings that Defendant failed to exercise due diligence and that Defendant's prior admission of ownership and control placed Plaintiff at an unfair disadvantage "on the eve of trial." The trial court merely reconsidered its conclusion that it would be unjust to allow Defendant, a non-owner of the property, to be found liable for this accident. It is this conclusion that we review.

### 1. Deliberate Creation of Judgment–Proof Situation.

■ To support its conclusion that granting Defendant's motion to amend would be unjust, the trial court found that Defendant deliberately set up a "huge umbrella of labyrinthin[e] devices" that confused ownership and made it "difficult, if not impossible, for anyone being awarded a judgment against one of them to pursue that judgment and have it satisfied." Simply put, the record before us does not support such a finding. Multiple corporation ownership of property is not presumptively deceitful. Moreover, there is not a scintilla of evidence in the record before us that supports the trial court's finding that Defendant "deliberately created a situation to be judgment proof." Accordingly, we agree with Defendant that this finding was erroneous and unsupported by the record.

### 2. Undue Prejudice.

■ Although the trial court's reasons for concluding that it would be unjust to allow Defendant to amend its answer are not supported by the record, we will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court. *Glaze v. Marcus,* 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986) (citing *Cross v. Cross,* 94 Ariz. 28, 381 P.2d 573 (1963)). Here, after considering the evidence before the trial court on September 1, 1992, we agree with the trial court's conclusion. In sum, Defendant's sixteen-month delay in seeking to amend its answer, the trial court's prior finding that Defendant failed to exercise due diligence, and the undue prejudice to Plaintiff resulting from Defendant's amendment support the court's conclusion that it would have been unjust to allow Defendant to amend its answer.

Arizona courts have not addressed facts similar to these in an opinion. Nevertheless, there are two analogous federal cases which have considered prejudice in light of Rule 15(a). In *Jones v. Ambler Quarry, Inc.,* 64 F.R.D. 696, 698 (E.D.Pa.1974), the court denied the defendant's motion to amend its answer to allow the defendant to deny possession and control of the premises in question. It noted that because the statute of limitations had run, the plaintiff would have been denied an opportunity to assert its claim against the party who was in possession and control of the premises at the time of the incident. *Id.* Similarly, in *Klee v. Pittsburgh & West Virginia Railway Co.,* 22 F.R.D. 252, 255 (W.D.Pa.1958), the court denied a defendant's motion to amend its answer to allow the defendant to deny diversity of citizenship. There, the court noted that because the motion was filed four days before the running of the statute of limitations, "for all practical purposes [the] plaintiff would have no opportunity to file suit" before the statute ran. *Id.* at 254. The policy underlying these decisions was best expressed by the court in *Jones,* when it noted:

> While there is no evidence of bad faith on the part of the defendant ... in this case, allowing it to amend its answer in this current situation would set a precedent which could encourage defendants in general to use tactics which could effectively wipe out the rights of plaintiffs. The Federal Rules of Civil Procedure were not designed to achieve this result.

64 F.R.D. at 698.[1] We agree with this sound policy.

■ We therefore hold that a plaintiff is unduly prejudiced by allowing a defendant to amend its answer when such amendment, for all practical purposes, would preclude litigation on the merits by denying such plaintiff the opportunity to file suit against the proper party in the proper forum within the statute of limitations period.

Here, it became evident to the trial court on September 1, 1992, that Plaintiff would be unduly prejudiced if Defendant was allowed to amend its answer so that it could deny ownership and control of the apartment complex. Indeed, the trial court learned several facts about which it was unaware one month earlier when granting Defendant's motion to amend its answer. First, although Defendant's motion to amend noted incorrectly that Wespac Investors Trust owned the apartment complex on the date of Plaintiff's

---

1. This policy was also expressed in *Long v. Lipkins,* 96 F.R.D. 234, 235 (E.D.Pa.1983).

injury,[2] the trial court learned later that several additional "entities" may have been necessary to the litigation. These entities include Davister Corp., Sunridge Management Co., Carmel Realty Services Ltd., National Realty Advisors, Syntek West Inc., Syntek Finance Corp., as well as three other Syntek entities to which Defendant's counsel vaguely referred at the hearing on September 1, 1992. Thus, Plaintiff's counsel was faced with a greater burden than merely doing "some digging" at the County Recorder's office to identify and name all of the necessary parties.

Second, the trial court had reason to believe that there was a nexus between some of these entities and Defendant. Moreover, Plaintiff's counsel informed the court about his belief that Miller, the President of Syntek Finance Corp., was associated with two or more of these entities. Counsel's belief is substantiated by the record on appeal.[3]

Third, the trial court was aware of the difficulty Plaintiff was experiencing in its attempt to identify the proper parties to the litigation. Minutes before the September 1, 1992, hearing started, Plaintiff filed a motion to accelerate the taking of a telephonic deposition of Miller. Plaintiff's pleading informed the court about its attempt to depose Miller and about Miller's lack of cooperation, noting:

> Plaintiff desires to take the deposition of Scott Miller, who has been identified by Defendant as the individual who might be able to identify the correct owner and manager of the property in question.... Plaintiff has made numerous attempts in the past to schedule this deposition but has always been advised that Defendant has been unable to contact Mr. Miller to schedule a convenient time for him to testify.

As this Court is aware, time is of the essence in this matter. Plaintiff must file her Amended Complaint no later than September 21, 1992, in order to preserve the Statute of Limitations. In order to file this Complaint, [P]laintiff is making every attempt to discover all parties who may have had any ownership and/or management interest in the property in question. Our investigation to date has revealed that Scott Miller is the individual who should be able to help clarify the ownership question. In attempting to schedule this deposition within a time frame which will allow the anticipated information to be disseminated and acted upon before the time for filing abates, Plaintiff has again been advised by [the] office [of Defendant's counsel] that Mr. Miller cannot be reached and that [counsel] will not be available until after September 16, 1992....

> Additionally, Plaintiff's investigator ... has been directed to "Scott Miller" by other corporations and individuals. He must be deposed as soon as possible. Plaintiff has proposed taking Mr. Miller's deposition telephonically on September 3, 1992, at 5:00 p.m.

> If this deposition were to be noticed in the ordinary course of events, time would not permit the taking of Scott Miller's deposition prior to the time that Plaintiff must file her amended [c]omplaint.

Thus, the necessity of speaking with Miller, combined with Plaintiff's inability to do so, was another factor before the court.

These facts demonstrate not only that Plaintiff would have been unduly prejudiced, but also that the court was unaware of such prejudice to Plaintiff when it granted Defendant's motion to amend on August 6, 1992.

2. Our independent review of the deeds indicates that Davister Corp., not Wespac Investors Trust, owned the apartment complex.

3. The essence of counsel's representation—that Miller was involved in this matter in more ways than just as the President of Syntek Financial Corp.—is validated elsewhere in the record before us. Miller's response to a subpoena duces tecum indicated that he: (1) was the President of Defendant Syntek Finance Corp. since the summer of 1991 and that Defendant "did not own, and has never owned" the apartment complex; (2) did not receive any compensation from Defendant because the corporation was "insolvent and unable to pay its officers;" (3) was the President of Syntek Investment Property, Inc., another corporation that was insolvent and unable to pay him or any other of its officers; (4) "received compensation and was an employee" of Carmel Realty Services, Ltd.—the entity which signed a management agreement with Davister Corp. and which was the "Manager of the property in question."

Plaintiff had to do more than just "some digging" to identify and name the proper parties as defendants within the three weeks remaining before the statute of limitations ran. Indeed, Plaintiff faced a no-win situation: on one hand, being denied the ability to litigate this claim against the proper party, because such party could not be identified and named within the statute of limitations period; or, on the other hand, "nam[ing] everybody and sort[ing] it out later" (as Defendant's counsel suggested), thereby risking sanctions for violating Rule 11, Arizona Rules of Civil Procedure. In this context, it is evident that had Defendant been allowed to amend its answer, the statute of limitations would have precluded Plaintiff for all practical purposes from having the opportunity to litigate the merits of her case against the proper parties.

In light of the fact that Plaintiff would have been unduly prejudiced, and recognizing the sixteen-month delay as well as the failure of Defendant to exercise due diligence, we agree with the trial court's conclusion that it would have been unjust to grant Defendant's motion to amend its answer. Although it is difficult to overlook the initial error of Plaintiff's counsel by naming the wrong party, we nonetheless conclude that the trial court did not abuse its discretion by denying Defendant's motion to amend.

## B. Defendant's Notice of Dangerous Condition of Sidewalk.

Defendant contends that because Plaintiff did not prove that Defendant had notice about the deterioration of the particular sidewalk where Plaintiff fell and injured herself, the court should have granted its motion for a directed verdict on this issue. We disagree.

▮ A directed verdict is proper if reasonable minds could not differ on the inferences or conclusions that could be drawn from the evidence. See Robertson v. Sixpence Inns of America, 163 Ariz. 539, 543, 789 P.2d 1040, 1044 (1990); Rourk v. State, 170 Ariz. 6, 9, 821 P.2d 273, 276 (App.1991). The proprietor of a business is not an insurer of the safety of its customers and the mere existence of a dangerous condition existing on a defendant's property is not enough to establish negligence when a plaintiff is injured by that condition. See Preuss v. Sambo's of Arizona, 130 Ariz. 288, 289, 635 P.2d 1210, 1211 (1981). Rather, to prevail on a negligence claim, a plaintiff must prove that the proprietor had notice of the dangerous condition by showing: (1) that the defendant or its agents caused the dangerous condition; or (2) that the defendant had actual knowledge of the existence of the dangerous condition; or (3) "that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it (i.e., constructive notice)." Id. (quoting Walker v. Montgomery Ward, 20 Ariz.App. 255, 258, 511 P.2d 699, 702 (1973)).

▮ Here, the jury reasonably could infer from the evidence that Defendant had, or should have had, notice of the deteriorating concrete sidewalk where Plaintiff fell. First, witnesses testified that the particular sidewalk at issue was decaying and crumbling, and that small pieces of concrete left indents in their hands when they touched the cement.

Second, the very nature of the deterioration allowed the jury to infer that the condition did not arise suddenly, but instead, over a period of time. Defendant likens the present action to Preuss, a case where a rock that was displaced from a planter onto a walkway caused the plaintiff to fall. There, because the dangerous condition was transitory and because there was no evidence concerning how long the rock causing the injury had been on the walkway, there was no proof that the defendant had constructive notice of the condition. 130 Ariz. at 290, 635 P.2d at 1212. Here, however, the cause of the injury—the deteriorated sidewalk—was not a suddenly-arising transitory condition, but rather a condition that occurred slowly over a period of time.

We believe the present case is analogous to Cooley v. Arizona Public Service, 173 Ariz. 2, 839 P.2d 422 (App.1991), where the plaintiff tripped over a section of sidewalk elevated almost one inch relative to the rest of the sidewalk. This court held that "the very

nature of a defect such as this, which a jury could find is neither transitory nor one that usually arises suddenly, is enough to support an inference that it had been in existence for sufficient time to put [the defendant] on notice." *Id.* at 3, 839 P.2d at 423. Moreover, unlike *Cooley*, where the dissent cited possible transitory explanations for the dangerous condition of the sidewalk, Defendant has not offered any such explanation for the decaying and crumbling concrete sidewalk at issue here. Accordingly, the jury reasonably could conclude from this evidence that Defendant had or should have had notice of the deteriorating sidewalk in the very place where Plaintiff was injured.

Finally, in addition to the testimony concerning both the condition of the sidewalk where Plaintiff fell and the nature of the deterioration, the jury also could consider testimony that the apartments' management had been informed about other deteriorated sidewalks throughout the complex. The maintenance man testified that several of the sidewalks were pitted, cracked, and crumbling. Moreover, he also noted that he had informed the management about the condition of the sidewalks on more than one occasion. The maintenance man further testified that even after management repaired certain portions of the sidewalks, he and other tenants informed management of the need to complete the repairs to the sidewalks, but to no avail. Thus, the jury had evidence that management had notice of the deteriorated conditions of the sidewalks and the need for repairs throughout the complex.

Therefore, because the jury reasonably could infer from this evidence that Defendant had or should have had notice of the dangerous condition caused by the specific deteriorated sidewalk upon which Plaintiff fell and injured herself, the court did not err by denying Defendant's motion for a directed verdict.

---

4. The court gave the following instruction:
   As an apartment owner, Defendant is required to use reasonable care to warn of or safeguard a dangerous condition of which Defendant has notice. Plaintiff claims that Defendant had notice of the dangerous condition that caused harm to Plaintiff. Defendant had notice of the dangerous condition if you find any of the following:

## C. *Admission of Photographs.*

Defendant asserts that the trial court abused its discretion by admitting in evidence photographs depicting other deteriorated sidewalks within the complex in violation of Rule 403, Arizona Rules of Evidence. We disagree.

Rule 403 provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We will uphold a trial court's determination absent a clear abuse of discretion. *See State v. Williams*, 133 Ariz. 220, 230, 650 P.2d 1202, 1212 (1982); *see also English–Clark v. City of Tucson*, 142 Ariz. 522, 526, 690 P.2d 1235, 1239 (App.1984).

As previously noted, evidence concerning the condition of the sidewalks throughout the complex was relevant and probative on the issue of Defendant's notice. Plaintiff was unable to obtain a photograph of the sidewalk in question, partly because it was repaired a few days after the accident. These photographs were admitted as illustrative exhibits and there was testimony that they depicted other sidewalks that resembled the condition of the sidewalk at issue. Weighed against this high probative value, there was little danger that this evidence would prejudice Defendant by confusing or unduly influencing jurors to decide this case on an improper basis such as emotion, sympathy, or horror. *See State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162, *cert. denied*, —— U.S. ——, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993).

Accordingly, we conclude that the trial court did not abuse its discretion.

## D. *Jury Instruction.*

Defendant argues that the trial court erred by giving a standard instruction [4] concerning

(1) Defendant or its employees, agents[,] or servants created the dangerous condition; or

(2) Defendant or its employees, agents[,] or servants actually knew of the dangerous condition in time to provide a remedy or warning; or

(3) The dangerous condition existed for a sufficient length of time that the Defendant or

notice in lieu of Defendant's requested instruction.[5] It contends that the standard instruction improperly allowed the jury to speculate "that because Defendant may have known of problems in the sidewalk in areas other than where Plaintiff fell, Defendant also knew that the specific sidewalk area where Plaintiff fell was dangerous." We disagree.

Jury instructions are considered in their entirety on appellate review and it is not error for the trial court to refuse to give a requested instruction that is covered adequately by the given instructions. *Timmons v. City of Tucson,* 171 Ariz. 350, 355, 830 P.2d 871, 876 (App.1991). In the present case, we see no error by giving the standard notice instruction and refusing Defendant's requested instruction. The standard instruction required the jury to determine whether Defendant had notice of "the dangerous condition that caused harm to Plaintiff." This phrase directed the jury's attention to the condition of the particular sidewalk upon which Plaintiff was injured.

We also note that Defendant's argument is problematic insofar as it ignores the proper legal standard. Plaintiff did not have to prove that Defendant actually knew that the condition of the sidewalk was dangerous. She could also meet her notice burden by proving that, in the exercise of reasonable care, Defendant *should have known* of the sidewalk's deteriorated condition.

Because the court properly instructed the jury about the notice required to find Defendant liable for negligence, it did not err by refusing to give Defendant's requested instruction.

---

its employees, in the exercise of reasonable care, should have known of it.
If you find that Defendant had notice of the dangerous condition and failed to use reasonable care to prevent harm under the circumstances, then Defendant was negligent.
5. Defendant requested the court to give the following instruction:
  Plaintiff may prove that Defendant had notice of a particular dangerous condition by proving either:
  (1) That Defendant had actual knowledge of the existence of the condition; or

---

## ATTORNEY'S FEES

Plaintiff has requested attorney's fees in her answering brief, "pursuant to Rule 21, A.R.C.A.P." Rule 21, Arizona Rules of Civil Appellate Procedure is a procedural rule that does not provide a substantive basis to award fees. *Mission Ins. v. Cash, Sullivan & Cross,* 170 Ariz. 105, 110–11, 822 P.2d 1, 6–7 (App.1991). Because Plaintiff has cited no substantive authority for her request, it is denied.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.

GERBER, P.J., and CONTRERAS, J., concur.

---

(2) That the condition existed for such a length of time that in the exercise of ordinary care the Defendant should have known of it and taken action to remedy it.
  The notice requirement is only satisfied if Plaintiff proves the landlord had notice of the specific dangerous condition which caused Plaintiff's injury and is not satisfied by a showing that Defendant had notice of conditions which produced the dangerous condition.

