NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

A.L., *Appellant*,[1]

*v.*

J.B., G.L., *Appellees*.

No. 1 CA-JV 18-0234
FILED 12-27-18

Appeal from the Superior Court in Mohave County
No. S8015SV201700021
The Honorable Doug Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Eric J. Engan, P.C., Kingman
By Eric J. Engan
*Counsel for Appellees*

---

[1]     We have amended the caption as reflected above. This caption shall
be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1         A.L. ("Father") appeals the termination of his parental rights to his child, G.L. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         In March 2015, J.B. ("Mother") gave birth to G.L. At the time of G.L.'s birth, Father was incarcerated. Shortly after G.L.'s birth, Mother moved to Arizona. During the first six to nine months of G.L.'s life, Mother brought G.L. to the prison on occasion to see Father, and Father would call Mother to speak to G.L. Mother and Father's relationship deteriorated soon after, and Mother stopped bringing G.L. to visit Father at the prison.

¶3         When Father was released from prison he was deported to Mexico, but legally returned to the United States in October 2017. In December 2017, Mother petitioned to terminate Father's parental rights to G.L. Mother argued Father abandoned G.L. pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1). Mother alleged that after September 2015, Father had little to no contact with G.L. Mother also alleged that Father never paid any support for G.L., or mailed G.L. letters, cards, or gifts. Father contested the petition, and the superior court held a severance hearing.

¶4         During the hearing, the court took evidence and heard testimony from Mother, Mother's boyfriend, and Father concerning Father's contact and relationship with G.L. since G.L.'s birth. At the end of the hearing, the court entered findings on the record that Father had abandoned G.L. under A.R.S. § 8-533(B)(1) and that terminating his parental rights was in G.L.'s best interests. The court found Mother's testimony to be more credible than Father's. Regarding the abandonment issue, the court found: (1) Father failed to maintain regular contact with G.L. since G.L.'s birth; (2) Father never sent support, letters, cards, or gifts to G.L.; (3) Father had hardly any contact with G.L. for over six months; and (4) Father's minimal efforts to establish a relationship with G.L. after he

returned to the United States did not overcome his prior abandonment of G.L. In deciding whether terminating Father's parental rights was in G.L.'s best interests, the court concluded that Father's current work as a confidential informant placed G.L. at risk of harm. Specifically, the Court found that G.L. could become a target for criminal organizations seeking reprisals against Father, and that Father's work might place G.L. near dangerous drug and weapon transactions.

¶5        The court later issued a written order reflecting its findings and terminating Father's rights to G.L. under the abandonment ground. Father timely appealed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶6        We have long recognized "that the right to the control and custody of one's children is a fundamental one." *Michael J. v. ADES*, 196 Ariz. 246, 249, ¶ 11 (2000) (quoting *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990)). "The right of a parent to custody of his child, however, is not absolute." *Id.* at 249, ¶ 12. To terminate a parent-child relationship, the superior court must find by clear and convincing evidence that at least one statutory ground for severance under A.R.S. § 8-533(B) exists. *Alma S. v. DCS*, 245 Ariz. 146, 149, ¶ 8 (2018). The court must also find severance is in the child's best interests by a preponderance of the evidence. *Id.* We review the court's severance determination for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

**A.    Sufficient Evidence Supports the Superior Court's Finding That Father Abandoned G.L.**

¶7        Father argues Mother failed to prove by clear and convincing evidence that he abandoned G.L. We disagree.

¶8        Section 8-533(B)(1) provides that the superior court may terminate the parent-child relationship if it finds "that the parent has abandoned the child." "Abandonment" means:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing

normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Abandonment is thus measured by the parent's actual lack of efforts to maintain the parent-child relationship, and not their subjective intent or desire to abandon the child. *Michael J.*, 196 Ariz. at 249, ¶ 18. "[T]he statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.*

¶9        When circumstances such as imprisonment "prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Pima County Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994). "[I]ncarceration alone . . . does not justify a [parent's] failure to make more than minimal efforts to support and communicate with [that parent's] child." *Michael J.*, 196 Ariz. at 250, ¶ 21.

¶10       Here, the superior court found Father had failed to maintain even minimum contact with G.L. for at least six months, and that the period of total abandonment of the parent-child relationship likely extended closer to nine months. The court also found: (1) Father made, at best, minimum attempts to maintain contact with G.L. during his incarceration; (2) Father, upon his release and deportation to Mexico, made some efforts to contact G.L., but that those efforts were sporadic until October 2017; (3) Father has never provided financial support or gifts for G.L., despite having the ability to send a small amount of support or a gift since at least October 2017; and (4) Father's marginally increased efforts to contact G.L. and assert his parental rights after he became aware of Mother's intent to terminate Father's parental rights were not enough to overcome his abandonment of G.L. Based on these findings, the court concluded Mother proved by clear and convincing evidence that Father had abandoned G.L. pursuant to A.R.S. § 8-533(B)(1).

¶11       Reasonable evidence supports these findings. At the severance hearing, Mother testified Father has never sent G.L. gifts, cards, letters, or financial support. Mother testified Father sought out and

4

maintained some in-person and over-the-phone contact with G.L. in the first year and a half of G.L.'s life, but that his communication with Mother and G.L. soon trailed off. From August or September 2016 until after Father's release from prison and deportation to Mexico in late March or early April 2017, Father made no attempts to contact Mother or G.L. Mother testified that once Father arrived in Mexico around April 2017, he reinitiated contact with her, but only to engage in small talk and request favors from her, not to earnestly discuss or facilitate contact with G.L. Father only began to request contact with G.L. after Mother made Father aware of her intent to have another man adopt G.L. Mother testified Father did not send G.L. letters, gifts, or financial support even after he began to express a greater interest in resuming communication with G.L. In sum, Mother's testimony established that after the first year and a half of G.L.'s life, Father made little or no effort to maintain his relationship with G.L. Father did not send G.L. cards, gifts, or letters; he did not provide G.L. with any financial support; and for at least six months, he made no attempt to contact G.L. at all.

¶12        Father disputed Mother's account during his own testimony. Father explained he sent cards, pictures, and drawings to G.L. during his incarceration; he indicated he sent text messages offering to support G.L. as soon as he was able; and during his incarceration he never stopped calling Mother to attempt to facilitate his relationship with G.L. Father also claimed Mother had selectively introduced portions of text-message conversations to support her story, and that the phone records from the prison where he was incarcerated would show that his attempts to contact G.L. never lapsed. But Father did not supply the court with either the rest of the text-message conversations with Mother or phone records from the prison. By failing to introduce the evidence he asserted would support his version of events, Father left the court to determine whether Father's assertions concerning these issues were credible based on his testimony alone. The superior court found Mother's version of events to be more credible and directed its findings accordingly. On this record, we cannot say the court abused its discretion by making that determination, or in ultimately finding that Mother had met her statutory burden of proving Father had abandoned G.L. pursuant to A.R.S. § 8-533(B)(1).

¶13        Citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), Father contends the superior court erred by failing to consider the impact of Mother's alleged efforts to prevent Father from maintaining his relationship with G.L. But Father's reliance on *Calvin B.* is misplaced. In *Calvin B.*, we reversed an order terminating a father's parental rights under the abandonment ground because he had consistently attempted to assert his

rights despite the hurdles placed in his path by the child's mother. *See id.* at 297, ¶¶ 21–26. Here, the primary obstacles Father faced in maintaining his relationship with G.L. were of his own making. Mother played no role in Father's incarceration, deportation, or alleged lack of ability to support G.L. Nor is Mother responsible for Father's resistance to seek legal decision-making and parenting time. The record contains no evidence that Mother erected the types of barriers to Father's ability to parent G.L. at issue in *Calvin B*.

**B.     Sufficient Evidence Supports the Superior Court's Determination That Terminating Father's Parental Rights Was in G.L.'s Best Interests.**

**¶14**     Father also argues there is insufficient evidence to support the superior court's conclusion that terminating Father's parental rights was in G.L.'s best interests.

**¶15**     At the best-interests stage, we "presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Alma S.*, 245 Ariz. at 150, ¶ 12 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005)). The court's primary concern during the best-interests inquiry is the stability and security of the child. *Demetrius L. v Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016). "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13. "Courts must consider the totality of the circumstances existing at the time of the severance determination." *Id.* at 150–51, ¶ 13.

**¶16**     Here, the superior court concluded terminating Father's parental rights to G.L. was in the child's best interests because of the risk of harm to G.L. Specifically, the court found that Father's alleged work informing on criminal organizations he was once affiliated with created an ongoing threat of harm to G.L. The court identified two particularly acute risks posed by Father's informant work: (1) G.L. could become a target should those organizations seek reprisals against Father; and (2) Father's admitted involvement in gun sales and drugs sales, even as an informant, "would expose [G.L.] to danger."

**¶17**     Reasonable evidence supports these findings. Father testified he currently works with multiple law enforcement agencies to inform on the operations of certain criminal organizations. Father acknowledged throughout his testimony that informant work was dangerous. Although

Father asserted it was no more dangerous than "what law enforcement does," and he was "not concerned that way," he also testified that he lives far away from his work because "[he] wouldn't want anything to happen to [his other children] and [his] mother." Regarding his contacts with weapons sales and drug sales, Father testified part of his work involved acquiring "samples" off the streets, and that those samples could include items such as guns, grenades, heroin, and methamphetamine. Father also claimed that he gets paid by the bust, and that these operations could encompass situations ranging from an attempted sale of "10 pounds of meth" to a million-dollar weapons deal. Accordingly, because reasonable evidence supports the superior court's finding that continuing Father's parental relationship with G.L. presented an ongoing risk of harm to the child, we hold the superior court did not abuse its discretion by finding that terminating Father's parental rights was in G.L.'s best interests.

**ATTORNEY'S FEES AND COSTS**

¶18      Mother requests an award of attorney's fees and costs. Because Mother cites no authority to support the request, she is not entitled to an award of attorney's fees. *See* ARCAP 21(a)(2); *Bed Mart, Inc. v. Kelley*, 202 Ariz. 370, 375, ¶ 24 (App. 2002). However, as the prevailing party, Mother is entitled to her costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶19      For the foregoing reasons, we affirm the termination of Father's parental rights to G.L.

